**UNITED STATES of America ex rel. James LEAK, Relator-Appellant,**

v.

**Harold W. FOLLETTE, Warden, Green Haven Prison, Stormville, New York, Respondent-Appellee.**

**No. 159, Docket 33290.**

United States Court of Appeals Second Circuit.

Argued Oct. 16, 1969.

Decided Nov. 17, 1969.

Barton R. Sadowsky, Asst. Atty. (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for respondent-appellee.

Stephen M. Rathkopf, Brooklyn, for relator-appellant.

Before FRIENDLY, HAYS and ANDERSON, Circuit Judges.

FRIENDLY, Circuit Judge.

Petitioner James Leak and a codefendant, Willie Joyner, were charged in a New York court with having accosted Juan Laureano Alamo in the hallway of his residence in the Bronx, forcing him to the roof of the building at gunpoint, robbing him of his wallet, and then compelling him to admit them to his apartment whence they fled after finding nothing of value. At the trial Alamo identified Leak and Joyner without qualification. Julio Mercado, a 12 year old boy who lived in an apartment adjoining Alamo's, gave a less positive identification of petitioner. Leak's counsel testified that two days before giving this evidence Mercado had said that he saw no faces during the robbery.

The summation of Leak's counsel was naturally devoted to an attack on the credibility of Alamo, in part on the not very impressive ground that he had been malingering that day, and on the reliability of Mercado. In response the prosecutor made remarks, quoted in the margin, which are alleged to have violated Leak's Fifth Amendment privilege.[1] No objection was made. The judge told the jury:

> A defendant in all cases may testify as a witness in his own behalf, but his neglect or failure to testify does not create any presumption against him. That is the law applicable to this case and that is the law which the jury will apply in considering the evidence which has been offered.

Claiming that his Fifth Amendment rights had been violated by the summation, Leak appealed through the hierarchy of New York courts without eliciting an opinion, 19 A.D.2d 946, 245 N.Y.S. 2d 972 (1st Dep't 1963); 15 N.Y.2d 695, 256 N.Y.S.2d 138, 204 N.E.2d 336 (1965), and unsuccessfully sought certiorari, 382 U.S. 855, 86 S.Ct. 106, 15 L.Ed. 2d 93 (1965). He then instituted a collateral attack in the New York courts. His petition was denied by the Supreme Court, Dutchess County, this was affirmed without opinion, 30 A.D.2d 777 (2d Dep't 1968), and leave to appeal to the Court of Appeals was denied. This petition followed.

Under the mistaken impression that no petition for certiorari had been filed and that the time for doing so had expired before April 28, 1965, when Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, was decided, Judge Metzner thought invocation of that decision to be barred under Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966). He also considered that petitioner had not made out a case on the merits but granted a certificate of probable cause, 28 U.S.C. § 2253.

■ Despite the fact that Leak did file a petition for certiorari on April 1, 1965, which was not denied until October

1. And I say to you broadly, before I go into any further detail, the evidence of Alamo and the young boy stands uncontradicted in this case. Cross-examination and re-cross-examination has not shaken Mr. Alamo's positive unequivocal identification of these two defendant[s], and as the state of the evidence is now, they stand positively identified as the two men who perpetrated this crime, uncontradicted, that is the evidence.

Is there any evidence here other than the positive identification by Alamo? And I say this to you, ladies and gentlemen, if you had nothing else in this case but the testimony of Mr. Alamo, I say you are duty bound to convict these two defendants.

&ast; &ast; &ast; &ast; &ast; &ast;

And if you are going to go by the evidence where is there anything to say that Alamo was wrong? Where? Is there any evidence to contradict his positive identification, and again I repeat, I want you to remember this, that if you had nothing else in this case but the uncontradicted testimony of Alamo consisting of a positive unequivocal identification, if that stands uncontradicted, it is sufficient to warrant a verdict of guilty in this case and I repeat it and I will stand on that.

&ast; &ast; &ast; &ast; &ast;

And that [Alamo's identification] stands uncontradicted here and there isn't the slightest reason given to you for disbelieving Alamo.

11, 1965, 382 U.S. 855, 86 S.Ct. 106, 15 L.Ed.2d 93, it is not altogether plain from *Tehan* that Griffin v. California is applicable. While the Court stated in *Tehan*, 382 U.S. at 409 n. 3, 86 S.Ct. at 461, that "the precise question is whether the rule of Griffin v. California is to be applied to cases in which the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari elapsed or a petition for certiorari finally denied, all before April 28, 1965," a negative answer to this question tells us only that a certain category of cases are excluded and does not necessarily mean that all cases not excluded are included in the category to which *Griffin* does apply. Thus it might be argued that *Griffin* cannot be invoked in cases where a petition for certiorari to review a state court judgment antedating April 28, 1965, had been filed before that date but was *denied* thereafter. However, in O'Connor v. Ohio, 385 U.S. 92, 93, 87 S.Ct. 252, 253, 17 L.Ed.2d 189 (1966) (per curiam), earlier remanded for proceedings in light of *Griffin*, O'Connor v. Ohio, 382 U.S. 286, 86 S.Ct. 445, 15 L.Ed. 2d 337 (1965), the Court stated that "in *Tehan* we cited our remand of petitioner's case as evidence that *Griffin* applied to all convictions which had not become final on the date of the *Griffin* judgment." This apparently interprets *Tehan* as holding that *Griffin* applies to all cases in which retroactive application had not been expressly refused by *Tehan* and thus includes cases, such as Leak's, where a petition for certiorari filed before April 28, 1965 was denied thereafter.

■ Even in light of *Griffin*, we find no merit in Leak's contention. Neither the language, the history, nor the policy of the self-incrimination clause affords support for the surprising proposition that in declaring that no person "shall be compelled in any criminal case to be a witness against himself," the authors of the Bill of Rights intended to prohibit proper advocacy concerning the strength of the prosecution's case. This is quite different from specific comment on the defendant's failure to take the stand. The remarks of the prosecutor and the judge in *Griffin* were held to violate the privilege because the California rule permitting them was "in substance a rule of evidence that allows the State the privilege of tendering to the jury for its consideration the failure of the accused to testify." 380 U.S. at 613, 85 S.Ct. at 1232. The thought was that "when the court solemnizes the silence of the accused into evidence against him," *id.* at 614, 85 S.Ct. at 1233, the state is in practical effect exercising the compulsion the Fifth Amendment forbids. As against this, presumably no one would argue that the self-incrimination clause in any way inhibits the state's production of evidence, even evidence which no one but the defendant can successfully contradict. If the state is free to do this, it must also be free to engage in normal advocacy so long as it does not point a finger at the accused's remaining silent in the courtroom. It is one thing to prevent the state from making capital of the defendant's invocation of the constitutional privilege but quite another to say that an accused who avails himself of it is entitled to impose on the prosecution shackles that would be unavailable to a man who testifies in his own defense. The Fifth Amendment was not aimed at the kind of "compulsion" generated by the evidence and fair argument about it. Indeed it was a recognition of the plight of the defendant who was *unable* to take the stand that led to the enactment of statutes by almost every state, beginning with Maine in 1864, and by the United States, Act of March 16, 1878, 20 Stat. 30, now 18 U.S.C. § 3481, making him competent to testify on his request; generally, these statutes also provided, in the language of the federal act, that "his failure to make such request shall not create any presumption against him." See Reeder, Comment on Failure of Accused to Testify, 31 Mich. L.Rev. 40 (1932).

We have examined a great number of cases, almost all of them arising under the federal statute,[2] concerning the extent, if any, to which the prosecutor is forbidden to stress the strength of his own case because the jury may take this to be a comment on the defendant's failure to testify. We will not undertake to review or even to cite them all, or attempt to reconcile them. One of the earliest, Carlisle v. United States, 194 F. 827, 830 (4 Cir. 1912), laid down the seemingly sound principle that "The rule that the prosecution shall not comment on the failure of the accused to testify should not prevent an argument that the evidence of the government is uncontradicted or unexplained." In what appears to have been this court's first encounter with the problem, Lefkowitz v. United States, 273 F. 664, 668 (2 Cir.), cert. denied, 257 U.S. 637, 42 S.Ct. 49, 66 L.Ed. 409 (1921), Judge Hough wisely wrote:

> It is only objectionable to comment upon the failure of the defendant personally to testify; and if at the close of the whole case any given point stands uncontradicted, such lack of contradiction is a fact, an obvious truth, upon which counsel are entirely at liberty to dwell.

A formula that has become rather a favorite of many courts, including this one, is "Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?" See, e. g., Morrison v. United States, 6 F.2d 809, 811 (8 Cir. 1925); United States ex rel. D'Ambrosio v. Fay, 349 F.2d 957, 958–961 (2 Cir.), cert. denied, 382 U.S. 921, 86 S.Ct. 301, 15 L.Ed.2d 235 (1965); United States v. Lyon, 397 F.2d 505, 509 (7 Cir.), cert. denied, 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 (1968); United States v. Marcus, 401 F.2d 563, 566–567 (2 Cir. 1968), cert. denied, 393 U.S. 1023, 89 S.Ct. 63, 21 L.Ed. 2d 567 (1969). The trend has been, correctly in our view, to treat the two adverbs in the conjunctive and to stress the "necessarily." Thus it has been held that remarks concerning lack of contradiction are forbidden only in the exceedingly rare case where the defendant alone could possibly contradict the government's testimony, see, e. g., Langford v. United States, 178 F.2d 48, 55 (9 Cir. 1949), cert. denied, 339 U.S. 938, 70 S.Ct. 669, 94 L.Ed. 1355 (1950); Hunt v. United States, 231 F.2d 784, 785 (8 Cir. 1956); Leathers v. United States, 250 F.2d 159, 165–166 (9 Cir. 1957); Garcia v. United States, 315 F.2d 133, 137 (5 Cir.), cert. denied, 375 U.S. 855, 84 S.Ct. 117, 11 L.Ed.2d 82 (1963);[3] Ruiz v. United States, 365 F.2d 103, 105 (10 Cir. 1966). The resourcefulness of the courts in thinking of persons other than the defendant who could contradict the prosecution's evidence is shown by several of the foregoing cases and, even more so, by Hood v. United States, 59 F.2d 153, 155 (10 Cir. 1932).[4] An inroad upon the "naturally and necessarily" test has been made by the rule that a prosecutor, when provoked by an attack on the credibility of a government witness, "may reply to argument of opposing counsel, and in doing so may make statements which might otherwise be improper." Baker v. United States, 115 F.2d 533, 544 (8 Cir. 1940), cert. denied, 312 U.S. 692, 61 S.Ct.

---

2. While it is arguable that the protection afforded by the federal statute goes beyond that of the Fifth Amendment, see Griffin v. California, *supra*, 380 U.S. at 612–613, 85 S.Ct. 1229, 14 L.Ed.2d 106, we do not rest decision on that basis.

3. This and the succeeding case slightly altered the formula by saying generally that comment as to noncontradiction was not forbidden and then adding, "This is especially true when the evidence against a defendant could be contradicted by someone other than himself." 315 F.2d at 137; 365 F.2d at 105.

4. The prosecutor noted testimony that a witness had bought home-brew of the defendant and added "Who says he didn't do it? Who denies—." This was held permissible since a third party might have been present.

711, 85 L.Ed. 1128 (1941). And any benefit the test might otherwise have for a defendant is largely cancelled by the corollary requiring an immediate objection and a request for a curative instruction, see United States v. Nasta, 398 F.2d 283, 285 (2 Cir. 1968), which would be likely to augment the damage rather than mitigate it. Indeed we have discovered only four decisions by federal courts of appeals among the multitude that have been cited by counsel or disclosed by our own research, over the past half-century, where comments as to noncontradiction have led to reversal. Linden v. United States, 296 F. 104 (3 Cir. 1924); Barnes v. United States, 8 F.2d 832 (8 Cir. 1925); Desmond v. United States, 345 F.2d 225 (1 Cir. 1965); Rodriguez-Sandoval v. United States, 409 F.2d 529 (1st Cir. 1969).[5] We need not determine whether we would follow these decisions on their own facts since the instant case differs in the possibility of contradiction through alibi witnesses, in the applicability of the "fair rejoinder" principle, and in the lack of immediate objection.

■■ We would not want this opinion to be taken as issuing any roving commission to prosecutors. Inflections and gestures may have an effect the cold record cannot convey, and trial judges must be alert to prevent abuses of that sort. We hold only that where the prosecutor confines himself to arguing the strength of his case by stressing the credibility and lack of contradiction of his witnesses, we will not be astute to find in this a veiled comment on the defendant's failure to testify even if in practical fact, although not in theory, no one else could controvert them.

The court is indebted to Stephen M. Rathkopf, Esq., for an able presentation on Leak's behalf.

Affirmed.

5. In *Desmond*, the First Circuit announced a principle, contrary to many of the cases cited, that comment concerning lack of contradiction is improper "[u]nless it is apparent *on the record* that there was someone other than himself whom the defendant could have called." 345 F.2d at 227 (emphasis supplied).