STATE OF CONNECTICUT *v.* ROBERTO GARCIA
(3127)

SPALLONE, DALY and BIELUCH, Js.

Submitted on briefs March 21—decision released May 13, 1986

*James J. Ruane,* special public defender, filed a brief for the appellant (defendant).

*Donald A. Browne,* state's attorney, and *Frederick W. Fawcett* and *Edward J. Caldwell,* assistant state's attorneys, filed a brief for the appellee (state).

SPALLONE, J. The defendant is appealing from a judgment rendered after conviction by a jury of the crimes of carrying a pistol without a permit in violation of General Statutes § 29-35 and of violating the state's dependency producing drug law, General Statutes (Rev. to 1979) § 19-481 (a).[1]

The jury could reasonably have found the following facts. On September 12, 1980, Bridgeport police officers Earl Mellow and Alonzo Johnson responded to the report of a shooting. Upon their arrival at the scene, a woman directed them to the downstairs area of the building and stated that a shooting was occurring there. The officers then proceeded to the rear of the building and walked down a stairwell where they looked through a window that was partially covered with tape. The officers pounded on the door and announced to the occupants that they were the police. Mellow observed a man, who was holding a gun in his hand, standing between a bar and a wall and looking in the direction of the officers. The gun was described by the officer as "being shiny." At that point, Mellow went to the side of the building and looked through a window which contained a fan. Johnson remained at the door. From Mellow's viewpoint, he again saw the same man peering towards the door where Johnson had been positioned. Mellow put his gun through an opening in the window and ordered the man inside to drop his gun. The individual turned and fired in the direction of Mellow who returned the fire and ducked back. The man fired a second shot and Mellow returned a second shot. Following this exchange, Mellow again looked through the window but could not see the man. He then ran back to the rear of the building where he pushed open the door, which was then partially opened, and ordered all in the premises to come out. The defendant, later identified as Roberto Garcia, exited from the building bleed-

---

[1] General Statutes (Rev. to 1979) § 19-481 (a) is now § 21a-279 (a).

ing from wounds to his leg and wrist. Mellow identified the defendant as the man who shot at him and immediately arrested him. An individual named Ramirez exited with the defendant from the building and, like the defendant, was wearing a gun holster. The defendant was taken to the hospital.

The two officers, Mellow and Johnson, then went into the basement area where they discovered three handguns. Mellow identified one of the handguns as the "shiny" weapon he had seen in the defendant's hand. This weapon, when found by the officers, was covered with blood. The basement area where the incident occurred was being used as an "after hours" club.

The defendant was tried before a jury on a five count information. Counts one and two charged the defendant with attempted murder, in violation of General Statutes §§ 53a-49 and 53a-54a (a). Count three charged the defendant with carrying a pistol without a permit, in violation of General Statutes § 29-35. Count four charged the defendant with possession of a stolen firearm, in violation of General Statutes § 53a-212 (a), and count five charged him with a violation of the state's dependency producing drug law, General Statutes (Rev. to 1979) § 19-481 (a).

A jury trial was conducted and, on September 9, 1983, in response to the defendant's motion for acquittal on all counts, the court, *Stodolink, J.,* granted the motion as to counts two and four and denied it as to the remaining counts. The jury returned a verdict of not guilty as to the first count of attempted murder and found the defendant guilty of the remaining counts of carrying a pistol on the person without a permit and of violating the state's dependency producing drug law.

On September 29, 1983, the court sentenced the defendant to a period of incarceration of one year on the weapon charge and a period of not less than two

nor more than four years on the drug charge, the two sentences to run consecutively, for a total effective sentence of not less than three nor more than five years, to be consecutive to a sentence to be imposed by the United States District Court on a federal charge. On October 18, 1983, the defendant filed a motion to correct the sentence, claiming that the total effective sentence was illegal. This motion was heard and denied on June 5, 1984. The defendant has served his federal sentence and now remains at liberty pending the outcome of this appeal.

The defendant claims the trial court erred (1) in denying his motion in limine relating to a prior conviction, (2) in denying his motion for a mistrial, (3) in admitting into evidence the cocaine allegedly seized from him, (4) in denying his motion for acquittal of the weapon charge, and (5) in pronouncing the total effective sentence imposed on him. We find nothing in the record of the trial court that supports these claims of error.

The trial court, after giving due consideration to the defendant's motion in limine, barred the state from introducing evidence of two of the defendant's prior felony convictions: A 1969 conviction for possession of a dangerous drug because of its remoteness in time and because it did not serve as a test of veracity; and a conviction for the possession of a firearm by a convicted felon because it closely tracked and was, therefore, prejudicial with regard to the weapon charges for which the defendant was on trial. The court, however, did allow, for impeachment purposes, evidence of the defendant's conviction of a federal charge of conspiracy to make an extortionate extension of credit. This crime essentially consists of an extension of credit with the threat to do violence if the debt remained unpaid.

Our Supreme Court has, on numerous occasions, spoken to the issue of the admissibility of prior felony con-

victions as impeachment evidence. See, e.g., *State* v. *Geyer,* 194 Conn. 1, 5, 480 A.2d 489 (1984); *State* v. *Carter,* 189 Conn. 631, 642, 458 A.2d 379 (1983); *State* v. *Hamele,* 188 Conn. 372, 383, 449 A.2d 1020 (1982); *State* v. *Nardini,* 187 Conn. 513, 521, 447 A.2d 396 (1982); *State* v. *Marquez,* 160 Conn. 47, 52, 273 A.2d 689 (1970). We agree with the defendant's position that the three pronged test utilized in *State* v. *Geyer,* supra, requires the court, when ruling on a motion in limine, to consider the prejudicial effect, the remoteness in time and the measure of truthfulness illustrated by the proffered prior criminal felony convictions. *State* v. *Geyer,* supra, 11. We also agree with the *Geyer* holding that prior convictions that are admissible for impeachment purposes fall into two categories depending upon the probative value of intrinsic credibility criteria. Id., 12. "First are those crimes that by their very nature indicate dishonesty or tendency to make false statement . . . . The second category involves convictions for crimes that do not reflect directly on the credibility of one who has been convicted of them." Id. We disagree with the defendant that the felony for which the defendant was convicted by the federal court did not, by its very nature, indicate dishonesty. We hold that the defendant's prior conviction fell within the first category discussed in *Geyer,* supra, 12–13.

The defendant's categorization of his federal conviction as one not demonstrating dishonesty is unpersuasive. An extension of credit coupled with the threat of violence if the debt remained unpaid is a form of larceny. Our General Statutes § 53a-119 (5)[2] defines extortion as a form of larceny. Extortion is larceny with the

---

[2] General Statutes § 53a-119 defines various types of larceny. Subsection (5) defines "extortion" and in pertinent part provides: "A person obtains property by extortion when he compels or induces another person to deliver such property to himself or a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will: (A) Cause physical injury to some person in the future . . . . "

threat of violence. Because of its familiarity with the matter before it, the trial court is in the best position to weigh the merits and dangers of any proffered testimony. *State* v. *Geyer,* supra, 13; *State* v. *Carter,* supra, 642. In this case, the trial court carefully weighed each prior conviction as it related to the particular facts and charges against the defendant to determine whether its prejudicial tendency outweighed its probative value. *State* v. *Marquez,* supra, 52. Under the facts and circumstances in this case, we find no reason to disturb the court's decision to admit the defendant's federal conviction as a crime involving dishonesty and bearing on his veracity. The court's decision not to designate the conviction as an unnamed felony is also sustainable for the reasons stated above.

The defendant's next claim, that the court erred in denying his motion for a mistrial, is likewise misplaced. During the state's cross-examination of the defendant, the prosecutor asked him if he was under the influence of cocaine at the time of the shooting. Before the defendant answered the question, his counsel objected. The jury was excused and the defendant moved for a mistrial. The motion was denied and the state was allowed to ask the defendant if he was under the influence of any chemical substance. To this question the defendant responded, "[n]o." The defendant's counsel did not object to the court's procedure.

Although we agree that a prosecutor is not an ordinary advocate, and that it is his duty to see that justice is done and to refrain from improper methods calculated to produce prejudice and wrongful decisions by the jury; *State* v. *Falcone,* 191 Conn. 12, 22, 463 A.2d 558 (1983); *State* v. *Ubaldi,* 190 Conn. 559, 574, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983); prosecutorial misconduct must rise to a greater level of impropriety than that manifest in this case to warrant the extraordinary relief of

a mistrial. The prosecutor merely asked a question which was subject to objection by defense counsel. The objection was sustained and the question was then rephrased in acceptable form. There were no attempts by the prosecutor to "hammer" home his point to the jury, nor did he make repeated efforts to introduce inadmissible evidence. The nature of the question was not improper, only the mention of the specific substance was inappropriate. The question was quickly corrected and the trial continued. Often, during the course of a trial, objectionable questions are asked, objections are sustained, and the trial goes on. The due administration of justice would be ill served if every time an objectionable question were asked the case would be subject to a mistrial. The burden is on the defendant to show that the prosecutor's remarks were prejudicial in light of the whole proceeding. *State* v. *Cosgrove*, 186 Conn. 476, 488–89, 442 A.2d 1320 (1982). The decision of the trial court as to the fairness of the trial is to be accorded great weight. *State* v. *McCall*, 187 Conn. 73, 77, 444 A.2d 896 (1982). The record here fails to disclose that the trial court abused its discretion in denying the motion for a mistrial.

The defendant also claims as error the admission into evidence of a ten dollar bill and the white powder substance contained thereon. Evidence adduced at trial reasonably supports a finding of the following facts. Upon the defendant's admission into the hospital, a nurse took from his person a ten dollar bill which was folded and contained a quantity of white powder later identified as cocaine. She turned the bill containing the substance over to the police who processed it through the regular procedures employed for the identification and preservation of evidence. The evidence adduced at trial supports a finding that the procedures employed by the police sufficiently tracked the course of the evidence through the various parties whose responsibil-

ity it was to identify, preserve and maintain the identity of the evidence, and were adequate to allow the admission of the evidence. Although there were some discrepancies in the testimony of the parties involved, they were reasonably resolved by the trial court in favor of the admissibility of the evidence. The ruling of the trial judge as to the admissibility of evidence cannot be disturbed on appeal except upon a showing of a clear abuse of judicial discretion. *United States* v. *Von Roeder,* 535 F.2d 1004, 1008 (10th Cir. 1979); *State* v. *Piskorski,* 177 Conn. 677, 697, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). A fair reading of the evidence fails to show a reasonable probability that the evidence had been changed in any important respect from its original condition. *United States* v. *Albert,* 595 F.2d 283, 290 (5th Cir. 1979); *State* v. *Bruno,* 1 Conn. App. 384, 388, 473 A.2d 311 (1984), aff'd, 197 Conn. 326, 497 A.2d 758 (1985).

The defendant's next claim, that the trial court erred when it denied his motion for acquittal on the weapons charge, is not sustainable. General Statutes § 29-35 prohibits the carrying of a pistol without a permit. General Statutes § 29-27 defines a pistol as a firearm having a barrel of less than twelve inches in length. We agree with the defendant that the state carries the burden of proving that the pistol, attributed to him, meets the statutory definition. *State* v. *Brown,* 173 Conn. 254, 260, 377 A.2d 268 (1977). The state must prove each element of the offense beyond a reasonable doubt. *State* v. *Morrill,* 193 Conn. 602, 608, 478 A.2d 994 (1984); *State* v. *DelVecchio,* 191 Conn. 412, 419, 464 A.2d 813 (1984). We agree with the trial court that there was sufficient evidence before the jury to support their finding that the weapon involved was a pistol. The definition was read to the jury, they had the actual weapon before them as a full exhibit, and they had the opportunity to examine it during their deliberation. The

defendant's reliance on *State* v. *Brown,* supra, is unwarranted. In *Brown,* the gun in question was not in evidence. Such is not the case here. In this case, the jury had the exhibit and the applicable law to reach a conclusion. Although the state did not hold the gun in one hand and a ruler against it as proof of the length of the barrel, the weapon itself was sufficient evidence from which the jury could draw its own conclusion as to the length of the barrel. " 'When a verdict is challenged because of insufficiency of the evidence, the issue is whether the [trier] could reasonably have concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt.' " *State* v. *Carter,* 196 Conn. 36, 44, 490 A.2d 1000 (1985). " 'Jurors are not "expected to lay aside matters of common knowledge or their own observation and experience or the affairs of life, but on the contrary, are to apply them to the evidence of facts in hand, to the end that their action may be intelligent and their conclusions correct." ' " *State* v. *Scielzo,* 190 Conn. 191, 198 n.11, 460 A.2d 951 (1983). The jury is not an empty vessel that must be programmed with every aspect and nuance of the issues it is called upon to resolve. It is an entity composed of thinking, feeling individuals endowed with varying degrees of intelligence, experience, insight, perceptiveness, analytical skills and common sense who are called upon to apply these attributes to the evidence adduced in court and come to a collective conclusion as to disputed issues. Under the facts and circumstances in this case, we can find nothing to support the defendant's contention that there was insufficient evidence to support the verdict.

The defendant's final claim of error, that the court committed reversible error in its pronouncement of a total effective sentence for the defendant, is wholly without merit. The court sentenced the defendant to

one year on the weapons count and to not less than two nor more than four years on the drug count, the second sentence to run consecutive to the weapons count, for a total effective sentence of not less than three nor more than five years. Mathematically, that is the exact sentence which the defendant is to serve. General Statutes § 53a-37 gives the trial court authority to pronounce consecutive sentences. *Green* v. *Warden,* 178 Conn. 634, 639, 425 A.2d 128 (1979). The court deemed consecutive sentencing to be an appropriate disposition in this case and stated it in clear and unambiguous terms. Counsel attempts to read problems which have no existence in fact into the sentence as pronounced. An objective analysis of the sentence informs the impartial observer clearly that the defendant is to serve one year of incarceration on one count, and, upon termination of that sentence, he is to begin serving a sentence of not less than two nor more than four years on the other count. When the first sentence ends, the second one begins. The two sentences, added together as consecutive sentences, come to not less than three nor more than five years. The court's pronouncement of sentence was proper.

There is no error.

In this opinion the other judges concurred.