## STATE OF CONNECTICUT *v.* LESTER ALLEN
## (4100)

DUPONT, C. J., BORDEN and DALY, Js.

Argued September 16—decision released November 18, 1986

*Martin Zeldis,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Jonathan C. Benedict,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Frederick W. Fawcett,* assistant state's attorney, for the appellee (state).

BORDEN, J. After a jury trial, the defendant was convicted of assault in the first degree in violation of General Statutes § 53a-59 (a) (1), assault on a peace officer in violation of General Statutes § 53a-167c (a) (1), attempted murder in violation of General Statutes §§ 53a-54a (a) and 53a-49, and having a weapon in a motor vehicle in violation of General Statutes § 29-38. On appeal, the defendant challenges (1) the trial court's action in permitting the state to reopen its case on the charge of having a weapon in a motor vehicle, after it had rested and after the defendant's motion for judgment of acquittal had been denied, and (2) the final argument of the assistant state's attorney, which called for explanations by the defendant, and the adequacy of the trial court's instructions with regard to that argument. We find no error.

The jury could reasonably have found the following facts: Officer Thomas Masterson, a Stratford police officer, while on patrol observed a car which had its license plate expiration tag obscured. By a radio registration check, Masterson determined that the car's registration, which was in the name of the defendant, had expired. He stopped the car. As Masterson was stopping his patrol car, the defendant exited his car, took a gun from his pocket, fired two shots in quick succession at the patrol car and, upon moving closer, fired two more shots. The defendant then returned to his car and left.

The defendant's car was discovered abandoned within a mile from the scene of the shooting. A search of the car revealed an Avco-Lycoming employment identification badge bearing the defendant's name and photograph. The investigating officers' staked out the defendant's home and place of work. When the defendant did not return to either place, a fugitive warrant was obtained. Three years later, the defendant was found and arrested by police officers in Georgia. At

trial, Masterson and David Powell, a witness to the shooting, made in-court identifications of the defendant and testified to their earlier photographic identifications of the defendant.

I

After the state had rested its case, the defendant moved for judgment of acquittal on the weapons charge, claiming that the state had failed to prove an essential element of the crime, namely, that the weapon was a "pistol" as charged in the substitute information. The applicable statute, General Statutes § 29-27, defines a pistol as a firearm having a barrel of less than twelve inches in length. That definition is specifically applicable to the offense with which the defendant was charged pursuant to General Statutes § 29-38.[1] The defendant argued that the state failed to establish that the weapon was a pistol within the meaning of the statute by entirely failing to offer any evidence on the length of its barrel. The trial court denied the defendant's motion. On the following court day, before the defendant had begun to present his case, the state moved to reopen its case in order to present evidence of the length of the barrel of the firearm. After the court granted the state's motion, Masterson testified that the barrel length was approximately two inches.

The defendant first claims that the court abused its discretion in permitting the state to reopen its case. He does not claim that it is an abuse of discretion for a trial court to permit the state to reopen its case in order to produce additional evidence, where the state has already produced a prima facie case. He argues that, because the state's initial case was legally insufficient, the court was obliged to grant his timely motion

[1] General Statutes § 29-27 provides: "The term 'pistol' and the term 'revolver,' as used in sections 29-26 to 29-38, inclusive, mean any firearm having a barrel less than twelve inches in length." See *State* v. *Brown,* 173 Conn. 254, 260, 377 A.2d 268 (1977).

for judgment of acquittal and thus abused its discretion in permitting the state to fill an essential gap in its case.[2] We disagree.

The state had the burden of proving that the firearm met the statutory definition of a pistol, namely, that its barrel was less than twelve inches long. *State* v. *Brown,* 173 Conn. 254, 260, 377 A.2d 268 (1977); *State* v. *Garcia,* 7 Conn. App. 367, 375, 509 A.2d 31 (1986). We agree with the defendant that at the close of the state's case sufficient evidence had not been presented on the length of the barrel. The pistol was not in evidence and, therefore, the jury could not draw conclusions based on their own observations. Cf. *State* v. *Garcia,* supra, 376. The only conceivable testimony bearing on the length of the pistol was the claim by one witness that the gun was pulled from a jacket pocket, and a ballistic expert's claim that the shot came from a Huntington or Richardson revolver. In *State* v. *Brown,* supra, similar testimony was held insufficient. In that case, there was evidence that the defendant pulled a "short" gun out of his shirt, and a ballistic expert testified that the bullets were fired from a Baretta semiautomatic handgun. We hold that initially "[t]he state failed to introduce any evidence upon which the jury could find that the barrel of the firearm was in fact less than twelve inches in length." Id.

We therefore turn to the issue of whether it was an abuse of the trial court's wide discretion to allow the state, in the aftermath of the defendant's motion for

---

[2] The defendant also argues that permitting the state to reopen its case constituted a violation of the double jeopardy clause. That clause protects against a second prosecution for the same offense after an acquittal or conviction, and against multiple punishments for the same offense. *State* v. *Mitchell,* 7 Conn. App. 46, 74, 507 A.2d 1017 (1986). The defendant argues that, because he should have been acquitted at the close of the state's case, permitting the state to reopen its case amounts to a second prosecution after an acquittal. This claim is without merit. The trial court's ruling did not convert the defendant's sole conviction in this one prosecution into a prior acquittal.

judgment of acquittal, to reopen its case in order to fill the evidentiary lacuna in that case. We conclude that in this case the trial court did not abuse its discretion.

We need not, on this record, resolve the footnote skirmish between the majority and dissenters in the recent case of *State* v. *Zayas*, 195 Conn. 611, 490 A.2d 68 (1985). Compare id., 614 n.3 (majority), with id., 623–24 n.3 (*Healey, J.,* dissenting). Those footnotes reflect different readings of the scope of the court's decision in *State* v. *Watson*, 165 Conn. 577, 345 A.2d 532 (1973).

In *State* v. *Watson*, supra, the four defendants, who were passengers in a car, were charged with having a weapon in a motor vehicle. After both the state and the defendants had rested, the trial court permitted the state to reopen its case in order to present evidence that the driver of the car did not have a permit for the weapon which was found in the car. The Supreme Court found no abuse of discretion. Id., 594.

In *State* v. *Zayas*, supra, a majority of the court, in dictum, read *Watson* as lodging in the trial court discretion to permit the state to reopen its case even where "the proffered evidence relates to an essential element of the offense charged." Id., 614 n.3. The majority did not specifically decide this aspect of the defendant's claim, however, because it held that the evidentiary gap in the state's case was properly fillable by judicial notice. The dissenters in *Zayas*, eschewing the judicial notice reasoning of the majority, argued that in the absence of a cognizable claim by the state of inadvertence and in the presence of prejudice to the defendant, when the defendant has made a timely and meritorious motion for judgment of acquittal based on evidentiary insufficiency it is an abuse of discretion to permit the state to reopen its case to fill any essential evidentiary gaps. Id., 622–23 (*Healey, J.,* dissenting). The dissenters read *Watson* as not controlling, because in their view that aspect of the case was dictum. See id., 623 n.3 (*Healey, J.,* dissenting).

Neither the dissent nor the majority cite *State* v. *McKnight,* 191 Conn. 564, 579, 469 A.2d 397 (1983), in their footnotes. In that case, the court acknowledged that even *after* the jury has begun deliberating, "the prevailing view permits the trial court some discretionary power to reopen . . . *particularly where an essential element has been overlooked. . . ."* (Emphasis added.)

We recognize, as the defendant argues, that permitting the state to reopen its case, in order to fill a gap disclosed by a timely and meritorious motion for judgment of acquittal by the defendant, in a sense penalizes a defendant for making such a motion, could discourage him from doing so, and could encourage him to wait until the last available moment in hopes that by then the missing evidence will not be readily available. On the other side of the balance, however, is the recognition that " 'a trial is not a game of technicalities, but one in which the facts and truth are sought.' *Eskridge* v. *State,* 258 Ind. 363, 369, 281 N.E.2d 490 (1972)." *State* v. *Zayas,* supra, 623 (*Healey, J.,* dissenting); see also *State* v. *McKnight,* supra, 578–79 (referring to "the concept of the trial as a truth-finding process"). Thus, permitting the state to reopen its case to fill an evidentiary gap in an appropriate case contributes to the search for facts and truth. The dictum of the *Zayas* majority in its footnote and the argument of the *Zayas* dissenters reflect these competing principles. We cannot, however, read *Watson* or *Zayas* as defining precisely where the balance must be struck between these principles.

It is also not necessary for us to decide in this case whether in all cases a trial court is within its wide discretion in permitting the state to reopen its case to produce evidence on an essential element of the crime charged, where the state's case was initially legally insufficient and where the defendant has disclosed that insufficiency by a motion for judgment of acquittal. We are spared the necessity of defining the full reach of

*State* v. *Watson,* supra, and of deciding whether a trial court is so within its discretion, because a close reading of the record in this case discloses that it falls within the traditional rule which the *Zayas* dissenters also acknowledged. See id., 622–23 (*Healey, J.,* dissenting).

That traditional rule is that the trial court has wide discretion to permit the reopening of a case in order to permit either party to present omitted or further evidence; *State* v. *Brigandi,* 186 Conn. 521, 545, 442 A.2d 927 (1982); " 'when *mere inadvertence or some other compelling circumstance . . .* justifies a reopening and no substantial prejudice will occur.' " (Emphasis added.) Id., 546, quoting *United States* v. *Hinderman,* 625 F.2d 994, 996 (10th Cir. 1980). This record discloses both inadvertence and other compelling circumstances, and lack of substantial prejudice.

The state's initial failure to produce the simple evidence of the length of the barrel can only be attributed to a misperception of the law on its part, compounded by a different misperception of the law on the defendant's part. The arguments on the defendant's motion for judgment of acquittal and the state's motion to reopen make clear that both the state and the defendant had simply overlooked the statutory definition of "pistol" contained in General Statutes § 29-27, and that the defendant sought to persuade the court that the penal code definition of pistol; General Statutes § 53a-3 (18); which mirrors General Statutes § 29-27, applied to General Statutes § 29-38.

In the argument on his motion for judgment of acquittal, the defendant did not advert to General Statutes § 29-27. He argued instead that the penal code definition of "pistol"; General Statutes § 53a-3 (18); applied to the term "pistol" as used in General Statutes § 29-38. The state in response also overlooked General Statutes § 29-27. It argued that General Statutes § 29-38 does not refer to the penal code, and that General Statutes

§ 29-38 prohibits possession in a motor vehicle of any firearm without regard to its barrel length. In the argument on its motion to reopen, the state requested permission to produce evidence on the length of the barrel of the firearm because, in its view, it was "hedging [its] bet" due to a fear that "the Supreme Court may determine that the penal code definition of pistol should be grafted on to the weapon in a motor vehicle statute . . . and I'd rather be safe than sorry." The defendant objected, but still did not advert to General Statutes § 29-27.

Thus, neither party focused on the plainly applicable statutory definition; see footnote 1, supra; and the court was led, by the defendant's claim and by the state's misperception, into considering a legal issue which was not properly in the case, namely, whether the penal code definition of "pistol" applied to General Statutes § 29-38, and thus was led into overlooking the statute which clearly did apply. Under these circumstances, we conclude that the state's evidentiary failure was inadvertent and that the case presented a compelling circumstance for granting the motion to reopen. *State* v. *McKnight,* supra. Furthermore, the necessary proof was readily available and promptly produced. While it is true that the court's discretionary power should not be exercised where the accused will be substantially prejudiced, prejudice in this context means legal prejudice, and "it is not enough that the testimony so admitted out of its order is disadvantageous to the accused . . . ." *State* v. *Ricker,* 90 Conn. 147, 153, 96 A. 941 (1916). The defendant had not begun the presentation of his case. The additional evidence permitted was subject to the opportunity for cross-examination and for rebuttal evidence by him. Thus, there was no substantial prejudice to the defendant.

## II

In his second claim, the defendant argues that the trial court failed, in its curative and supplemental

instructions, to protect the defendant against adverse inferences flowing from improper final closing argument by the state. In its final closing argument; see Practice Book § 874 (4); after the defendant had argued to the jury, the state argued that it was still awaiting a reasonable explanation as to why two witnesses had made identifications of the defendant, why the defendant's car had been found abandoned a short distance from the crime scene and why the defendant had fled the state. The defendant took exception to the argument, claiming that its effect was to tell the jury to draw an adverse inference from the defendant's failure to testify. The defendant did not move for a mistrial. Nor does he claim on appeal that a mistrial should have been granted. Thus, his exception to the state's argument can only be construed as a request for a curative instruction by the trial court.

The trial court in its charge specifically instructed the jurors that they should disregard the state's comment, that no explanations were required of the defendant and that the state had the burden of proving guilt beyond a reasonable doubt. After the charge was completed, the defendant expressed satisfaction that the curative instruction addressed the state's allegedly improper argument.[3] Additionally, the defendant took exception to the trial court's failure to charge the jury that they could draw no adverse inference from the defendant's failure to testify. See footnote 3, supra. Thereafter, the trial judge recalled the jury and gave a general no adverse inference charge in accordance with General Statutes § 54-84 (b). The defendant took no further exception to this supplemental charge.

---

[3] The defendant's counsel addressed the court as follows: "Also, I have a question. *I know His Honor covered the fact that—and corrected the improper inferences that were made during [the assistant state's attorney's] argument—assertion[s] that certain conduct of Mr. Allen begs explanation.* Under [General Statutes] 54-84, I don't know if the court adequately addressed the failure of Mr. Allen to testify." (Emphasis added.)

The defendant's claim on appeal is that the supplemental charge should have been linked to the allegedly improper comments made by the state in its final closing argument. He claims that the failure to link the supplemental charge with the state's comments constituted a violation of his fundamental constitutional right not to testify. Since the defendant did not except to the supplemental charge, he seeks review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). Our Supreme Court has recently held that a similar claim is reviewable under *State* v. *Evans,* supra. See *State* v. *Magnotti,* 198 Conn. 209, 215, 502 A.2d 404 (1985). We therefore review the defendant's claim.

The defendant does not claim that the state directly commented on his failure to testify. Such comment is, of course, prohibited. *Griffin* v. *California,* 380 U.S. 609, 85 S. Ct. 1299, 14 L. Ed. 2d 106, reh. denied, 381 U.S. 957, 85 S. Ct. 1797, 14 L. Ed. 2d 730 (1965). The defendant claims that the state's comments were an indirect comment on his failure to testify. "An indirect remark by the prosecuting attorney which draws the jury's attention to the fact that the accused failed to testify may also violate the accused's right." *State* v. *DeMartino,* 7 Conn. App. 292, 294, 508 A.2d 809 (1986).

This does not mean, however, that the state is precluded in argument from commenting on the strength of its case or the weakness of the defense case. *State* v. *Magnotti,* supra, 220; see *United States ex rel. Leak* v. *Follette,* 418 F.2d 1266, 1268–69 (2d Cir. 1969), cert. denied, 397 U.S. 1050, 90 S. Ct. 1388, 25 L. Ed. 2d 665 (1970). "The prosecutor is entitled to comment on a defendant's failure to call witnesses to contradict the factual character of the government's case, *United States* v. *Dioguardi,* 492 F.2d 70, 81–82 (2d Cir.), cert. denied, 419 U.S. 873 [95 S. Ct. 134, 42 L. Ed. 2d 112] (1974), as well as his failure to support his own factual theories with witnesses. *United States* v. *Rodriguez,*

556 F.2d 638, 641 (2d Cir. 1977); *United States* v. *Lipton,* 467 F.2d 1161, 1168 (2d Cir. 1972), cert. denied, 410 U.S. 927 [93 S. Ct. 1358, 35 L. Ed. 2d 587] (1973)." *United States* v. *Bubar,* 567 F.2d 192, 199 (2d Cir.), cert. denied, 434 U.S. 872, 98 S. Ct. 217, 54 L. Ed. 2d 151 (1977). The ultimate test of whether a prosecution argument indirectly and impermissibly comments on the defendant's failure to testify is whether, because of its language and context, the jury would naturally and necessarily interpret it as comment on the defendant's failure to testify. *State* v. *Magnotti,* supra, 216; *State* v. *DeMartino,* supra, 294–95. A significant factor in applying this test is whether the argument calls for information or explanations which only the defendant could be expected to supply. See *United States ex rel. Leak* v. *Follette,* supra; *State* v. *DeMartino,* supra, 295.

In its final closing argument, the state commented to the jury that it was still waiting for an explanation as to (1) why two witnesses had identified the defendant in a photo array, (2) why the defendant's car was found abandoned a mile from the crime scene, and (3) why the defendant fled the state.[4] The defendant con-

---

[4] The references are as follows:

"I am still waiting for a reasonable explanation as to a number of things here. I'm not going to go back into the element[s] of the crime. I think I covered them in my opening argument.

"We're talking about identification here. I'm still waiting for a reasonable explanation about the fact that Thomas Masterson on October 20th and David Powell on Sunday morning, September 21st, both from this photo pack, without having any chance to look at the back to know if there are any signatures on there, without knowing—you recognize the guy. You think you could recognize him—yeah, I probably could remember what he looks like.

"Well, here (indicating). That's all they knew about it.

"Well, here (indicating), see if you can identify the guy.

"How do you explain that? They both, not knowing anything else about this little display here, identified the same guy. The only explanation for that is that they both saw him. It's not a strange consequence. It's evidence. They both saw him.

ceded in his brief and at oral argument in this court that witnesses other than the defendant could have provided explanations as to the identifications and the abandoned car. Reading the argument in its context, we do not believe that the jury naturally and necessarily interpreted it as comment on the defendant's failure to testify. This is particularly true here because the trial court instructed the jury to disregard the state's comment, and the defendant endorsed that instruction. We cannot, therefore, regard the state's references to that evidence as an impermissible indirect comment on the defendant's failure to testify. That argument amounted only to a comment on the strength of the state's case and the corresponding inability of the defense to cast doubt on that strength.

The defendant argues, however, that only he could explain his flight and that, therefore, the prosecutor, by asking for an explanation of that flight, indirectly

"I'm still waiting for an explanation for the defendant's car. Mr. Kelly said that maybe anybody could have been driving it. I don't know who it was. His photo ID is in there. It was his car abandoned a mile from the crime scene, minutes from the crime.

"We went over this back in our case. On the way home, it was abandoned right by St. Michael's Cemetery.

"And I'm still waiting for some kind of explanation for this flight. It's not easy to get a job at Avco. It's not easy. People are walking around in 1980—people looking for jobs all over the place. It's not easy to find a job. Here is a guy who had a good job, even owed a paycheck. It's minutes within a cop being shot that he disappeared. I'm looking for a reasonable explanation and I'm looking to see it from the defense. . . .

"How do you explain the two separate identifications? That's not a mere coincidence. I'm still waiting for an explanation about the car. Counsel said it could have been anybody's. But who?

"Lester Allen is the guy that has been identified as driving the car. I'm still waiting for an explanation for that flight. There's only one explanation when you put all the evidence together ladies and gentlemen, and that's that it was Lester Allen, not just beyond a reasonable doubt, but beyond any possible doubt and the State has proven each and every element of each of the crimes charged not just beyond a reasonable doubt, but beyond any possible doubt."

and impermissibly commented on his failure to testify. Under the facts of this case, we are unable to agree with the defendant.

Our law has long permitted the jury to draw an adverse inference from the failure of a defendant to explain his flight, whether or not he has testified. "[F]light, when unexplained, tends to prove a consciousness of guilt. *State* v. *Beaulieu,* 164 Conn. 620, 632, 325 A.2d 263 (1973); *State* v. *Miller,* 154 Conn. 622, 628, 228 A.2d 136 (1967); *State* v. *Ford,* 109 Conn. 490, 496, 146 A. 828 (1929)." *State* v. *Ferrara,* 176 Conn. 508, 516, 408 A.2d 265 (1979). The court charged the jury, without challenge by the defendant, in accordance with this doctrine, which derives from common sense experience. Where the trial court properly instructs the jury that they may draw an inference of consciousness of guilt from unexplained flight, we are unwilling to hold that the prosecutor is precluded from commenting on that during closing argument. Such a comment does no more than to anticipate an appropriate part of the court's charge to the jury. "The accused, by his failure to testify, cannot insulate himself from general comment on the weakness of his case, even though his failure so to testify may be perceived by the jury as having contributed to the general weakness about which comment is made." *State* v. *Magnotti,* supra, 220; see also *United States ex rel. Leak* v. *Follette,* supra, 1268.

We hold, therefore, that the state's argument in this case was not an unconstitutional indirect comment on the defendant's failure to testify. Although the line is often quite narrow between, on the one hand, legitimate comment on the strength of the state's case or rebuttal of the defense's case and, on the other hand, indirect comment on the defendant's failure to testify, the state did not cross that line here. Since no fundamental constitutional right of the defendant was vio-

lated by the state's argument, we reject his claim that the supplemental no adverse inference instruction should have been linked to the state's comments during its final closing argument.

There is no error.

In this opinion the other judges concurred.