STATE OF CONNECTICUT *v.* LEON SMITH
(3727)

HULL, SPALLONE and BIELUCH, Js.

Argued September 16—decision released December 23, 1986

*Timothy H. Everett,* with whom, on the brief, were *Ronald R. Tomlins* and *Richard Chertock,* certified legal interns, for the appellant (defendant).

*Jonathan C. Benedict,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

BIELUCH, J. The defendant in this action, which was tried to the court, was charged in the first and second counts with assault in the first degree, in violation of General Statutes § 53a-59 (a) (1), in the third count with carrying a pistol on his person without a permit, in violation of General Statutes § 29-35, and in the fourth count with having a weapon in a motor vehicle without a permit, in violation of General Statutes § 29-38. After the state rested, the defendant moved for a judgment of acquittal on the weapons charges in the third and fourth counts, which the court denied.

Thereafter, the defendant presented evidence and testified in his own behalf. After trial, the court rendered a judgment of guilty on each of the four counts and sentenced the defendant to an effective term of seven years. From this judgment, the defendant has appealed.

The defendant makes two claims of error relating to the third and fourth counts, respectively. In the first claim, he argues that the trial court should have granted his motion for judgment of acquittal on the third count at the close of the state's case-in-chief because the evidence presented did not show that the gun used in the shooting had a barrel less than twelve inches in length. The second claim makes the assertion that his motion for judgment of acquittal on the fourth count at the close of the state's case-in-chief should similarly have been granted because the state's evidence failed to establish that the gun found in the car occupied by the defendant and his uncle was a weapon for which a proper permit had not been issued.

The facts which the court might reasonably have found after the state's case-in-chief are basically not in dispute. In the early evening of February 29, 1984, the defendant was a passenger in an automobile owned and operated by his uncle in the city of Bridgeport, when it nearly collided with a taxicab occupied by a driver and passenger. The defendant's uncle then went to the railroad station taxi stand to confront the driver of the taxicab. There the uncle became involved in an altercation with the taxicab's passenger. The defendant thereupon got out of the car and fired two shots from a gun, striking the taxi driver and passenger. The defendant and his uncle then left the scene.

When the police arrived, the victims had been taken to a hospital by another taxi driver. A witness gave the police a description of the defendant and his uncle as well as the registration number of their car. A dispatch was then broadcast by the police for their apprehension. The defendant was apprehended shortly thereafter within the city limits. Officer Geraldine Carofano frisked the defendant, but found no weapon on his person. She discovered, however, an empty gun holster in the rear belt area of his pants while patting him down. After the defendant told her that "there was no revolver," she found a Modio Rossi .38 caliber revolver underneath the front seat of the car where the defendant had been sitting. The weapon cylinder contained five shots and these carried three live rounds and two spent shells. The gun, ammunition and shells were later admitted into evidence. Upon notice of the defendant's apprehension, Officer Richard Godwin, the investigating officer, then left the railroad station and arrived at the scene where the defendant was being held. The defendant was arrested and taken to the police station. There he signed a waiver of rights form and gave an oral statement to the investigator.

The defendant stated that after the speeding taxicab almost collided with his uncle's car, they decided to go down to the train station to confront the other driver. At the railroad station, the uncle approached the two men in the cab. The occupants of the cab then got out of their vehicle and an argument ensued. The defendant told the officer that he thought his uncle was going to be hurt, so he "did what he had to do" and shot the driver and passenger. He further admitted to the officer that he carried the gun for his own protection and had no permit for it.

I

The defendant's first claim is that the trial court erred by denying the defendant's motion for judgment of acquittal as to the third count, made at the close of the state's case. He argues that an acquittal was required, due to the state's failure to produce any evidence that the defendant had in his possession at the train station, a firearm "having a barrel less than twelve inches in length," within the prohibition of General Statutes § 29-35.[1] This claim is premised upon the contention that the trial court erred in finding that the revolver introduced into evidence at trial was the firearm which the defendant used at the train station. He asserts that if the trial court's inference was improper, then there was no evidence as to the type of firearm possessed by the defendant, and his conviction on the third count could not stand.

" 'Under the waiver rule, when a motion for acquittal at the close of the state's case is denied, a defend-

---

[1] In arguing his motion before the trial court, the defendant referred to General Statutes § 53a-3 (18) as defining a "pistol" or "revolver" to mean "any firearm having a barrel less than twelve inches." General Statutes § 29-27, which defines a "pistol" or "revolver" requiring a permit within the scope of the prohibition of § 29-35 and General Statutes § 53a-3 (18), defining such firearms for offenses under the Penal Code, are identical in their provisions. See *State* v. *Allen*, 9 Conn. App. 169, 175–76, 517 A.2d 1043 (1986).

ant may not secure appellate review of the trial court's ruling without foregoing the right to put on evidence in his or her behalf. . . . If the defendant elects to introduce evidence, the appellate review encompasses the evidence in toto.' " *State* v. *Simino,* 200 Conn. 113, 118, 509 A.2d 1039 (1986), quoting *State* v. *Rutan,* 194 Conn. 438, 440, 479 A.2d 1209 (1984).

In the present case, the defendant challenges the validity of the waiver rule and asks that we review the sufficiency of the evidence at the end of the state's case.[2] Even if we grant the defendant the limited review which he seeks, he could not prevail on his claim. See *State* v. *Simino,* supra, 118 n.5; *State* v. *Lizzi,* 199 Conn. 462, 464–65, 508 A.2d 16 (1986).

Addressing the merits of the defendant's claim, we need to determine whether the trier of fact could reasonably have concluded that the facts presented at the close of the state's case and the inferences reasonably drawn therefrom established the defendant's guilt beyond a reasonable doubt. *State* v. *Rutan,* supra, 444. After a careful review of the state's evidence in the presentation of its direct case and inferences reasonably drawn from the facts established thereby, we conclude that the trial court did not commit error in finding that the revolver in evidence was the weapon possessed by the defendant, and, consequently in denying the defendant's motion for acquittal on the third count.

In denying the defendant's motion for acquittal, the trial court relied upon the following: (1) the statement of the accused to the officer identifying the location of

---

[2] Despite the " 'growing criticism of the waiver rule' "; *State* v. *Simino,* 200 Conn. 113, 118 n.5, 509 A.2d 1039 (1986); it is still the law in Connecticut. See *State* v. *Rutan,* 194 Conn. 438, 442–44, 479 A.2d 1209 (1984) (discussing the criticisms of the waiver rule).

the traffic incident involving his uncle; (2) the intent of the defendant and his uncle to proceed to the railroad station after the near collision with the taxicab operated by Fernando Medina; (3) the defendant's further statement that they proceeded to the place where they expected the vehicle would be located and that, upon finding the taxicab and observing the altercation with his uncle, "he did what he had to do," and, when asked what he meant by that, he said "he shot them both"; (4) his indication that he was remorseful for the shooting; (5) the testimony of the police concerning the events surrounding the defendant's arrest; (6) the empty holster located on the defendant's belt; (7) the discovery of a revolver under the front passenger seat of his uncle's vehicle; and (8) corroboration by the victims that the passenger in the car was the one who had used the weapon at the railroad station, and that the operator had engaged in the altercation with them.

In addition to the evidence referred to by the court when it denied the defendant's motion, we also note the following in the state's case-in-chief: Officer Geraldine Carofano testified that at approximately 7:50 p.m. on the night of the shooting, she received a radio dispatch that the occupants of an older green Buick, bearing Connecticut registration plate number YW 1200, were wanted in regard to a shooting that had occurred earlier at the railroad station. When Carofano saw a vehicle which matched the description of the wanted car, she and her partner stopped the Buick and ordered the two occupants to get out. She subsequently discovered that the defendant was wearing an empty belt holster. A search of the vehicle revealed a .38 caliber revolver underneath the defendant's seat. The revolver contained five shells, two of which had been fired. The defendant admitted ownership of the gun without a permit.

From this evidence presented by the state, the trier could reasonably have found beyond a reasonable doubt that the .38 caliber revolver found in the car underneath the front passenger's seat and admitted into evidence at trial was the firearm used in the shooting. Since the gun was admitted into evidence, the court was free to determine by examination and view that it was a revolver as defined in General Statutes § 29-27. See *State* v. *Garcia,* 7 Conn. App. 367, 375–76, 509 A.2d 31 (1986); cf. *State* v. *Allen,* 9 Conn. App. 169, 172, 517 A.2d 1043 (1986). The defendant does not dispute that the firearm in evidence had a barrel of less than twelve inches, or otherwise conformed to the statutory definition of a revolver requiring a permit. That conclusion was admittedly apparent from a view of the weapon. A tape measurement is not necessary for what can be ascertained by the senses. The trial court, therefore, did not err in denying the motion for judgment of acquittal as to the third count.

## II

The defendant's second claim is that the trial court erred in denying his motion for judgment of acquittal as to the fourth count, also made at the close of the state's case, asserting the state's failure to prove an essential element of the crime, namely, that the revolver found in the car was one "for which a proper permit had not been issued." During oral argument before this court, the defendant's counsel conceded that if the trial court was correct in finding that the gun under the seat and introduced into evidence was the gun used by the defendant, then he could not prevail on count four, the weapon in a motor vehicle charge. Mere possession of the weapon is not dispositive of the defendant's claim of error on the fourth count. This concession of counsel, therefore, was not warranted by the facts of this case, and as such we decline to follow it. We are not bound by the concessions of counsel. See

*State* v. *Putnoki,* 200 Conn. 208, 219 n.6, 510 A.2d 1329 (1986); *State* v. *Avery,* 199 Conn. 377, 379 n.2, 507 A.2d 464 (1986); *Allen* v. *Tyson,* 133 Conn. 699, 702, 54 A.2d 490 (1947).

General Statutes § 29-38 provides in pertinent part: "Any person who knowingly has, in any vehicle owned, operated or occupied by him, any weapon for which a proper permit has not been issued as provided in section 29-28 or section 53-206, or has not registered such weapon as required by section 53-202, as the case may be, shall be fined not more than one thousand dollars or imprisoned not more than five years or both, and the presence of any such weapon in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof." Our Supreme Court has held that "[t]he prima facie provision of § 29-38 has the inevitable effect of placing on the alleged violator the burden of proving his innocence . . . [which] constitutes a denial of due process of law as protected by the fourteenth amendment and is therefore invalid." *State* v. *Watson,* 165 Conn. 577, 597, 345 A.2d 532 (1973).[3]

It is a fundamental principle of criminal law that a defendant cannot be lawfully convicted of a crime unless the state proves each and every essential element of the alleged crime beyond a reasonable doubt. *State* v. *Morrill,* 193 Conn. 602, 608, 478 A.2d 994 (1984). " 'This means proof which "precludes every reasonable hypothesis except that which it tends to support and is consistent with the defendant's guilt and inconsistent with any other rational conclusion.". . .' " (Citations omitted.) *State* v. *Beauton,* 170 Conn. 234, 240, 365 A.2d 1105 (1976).

[3] The court, however, did not strike down the entire statute as unconstitutional, finding that the remainder of the statute was clearly severable and established each essential element of the crime. *State* v. *Watson,* 165 Conn. 577, 597, 345 A.2d 532 (1973).

The lack of a proper permit is an essential element for a violation of General Statutes § 29-38 which the state must prove beyond a reasonable doubt. *State* v. *Beauton,* supra. In *Beauton,* the court held that the state's proof of the defendant's lack of a local permit in the municipality where the defendant was arrested, was insufficient to establish that the weapon was one for which a proper permit had not been issued. The court indicated that the defendant could have possessed a local permit from his area of residence or place of business and thereafter, as a holder of a local permit, obtained a statewide permit from the state police. In so holding, the court observed as follows: "It was not an impossible task for the state to prove, if the facts warranted it, not only that the defendant did not have a permit from the issuing authority of the municipality where the arrest occurred but that he also did not have one valid within the state issued by the commissioner of state police to the defendant as the holder of a local permit issued by the proper official of the municipality where the defendant resided or had his place of business." Id., 242. Although the defendant in *Beauton* was not alone in the vehicle at the time of his arrest, the issue of whether his passenger had a valid permit was never raised.

In *State* v. *Watson,* supra, the Supreme Court considered the defendants' challenge to their convictions under General Statutes § 29-38, claiming that the state failed to introduce evidence that the driver of the car had no valid permit for the gun found therein. *State* v. *Watson,* supra, 594–95. The court in *Watson,* finding error on the impermissible presumption of a violation under the statute, as noted above, did not decide this issue.

In the present case, the state's evidence demonstrated that the defendant did not have a permit to carry a pistol in Bridgeport, the city of his residence

and the place of the arrest. This evidence consisted of testimony that the defendant possessed neither a local permit from Bridgeport, nor a statewide permit. The defendant argues, however, that the state was obligated to prove that the driver of the vehicle, Moore, also lacked a proper permit to possess the pistol.

As applied to the present case, proof that a weapon in a motor vehicle is "a weapon for which a proper permit has not been issued" required a showing that no one in the vehicle had a proper permit to possess or carry such a weapon. We agree with the defendant that if Moore had a proper permit to carry a pistol, the defendant could not be convicted under General Statutes § 29-38. This is true despite the state's evidence that Smith had purchased the revolver in Virginia and carried it to work daily on the train to New London.[4] Under the language of the statute, if Moore possessed a valid pistol permit at the time of the arrest, the presence of the revolver in the vehicle would not constitute a violation of § 29-38 by any occupant. The state, by failing to establish that Moore lacked a valid permit, failed to prove an essential element of the crime alleged against the defendant. Although Moore testified during the trial, he was not asked whether he possessed a permit to carry a revolver in Bridgeport. The state has failed to indicate to this court the existence of any evidence in the record that Moore lacked a permit to carry a revolver. In reaching our conclusion, we find that neither the statutes, nor case law, require a permit for an individual weapon, as distinguished from a classification or type of weapon, such as a "pistol or

---

[4] In determining the scope of the prohibition of General Statutes § 29-38, it is helpful to distinguish it from the statutory prohibition against mere possession of a pistol without a permit. The facts of the present case amply support the defendant's conviction of possession of a pistol without a permit, a violation of General Statutes § 29-35. A weapon in a vehicle offense, however, is a separate and distinct criminal charge. *State* v. *Redmond,* 10 Conn. Sup. 272, 273 (1942) (discussing the merger doctrine).

revolver." See General Statutes §§ 29-28, 53-206. We find, therefore, that the evidence presented at the trial was insufficient to support the defendant's conviction on the fourth count.

There is error in part, the judgment is set aside as to the fourth count (weapon in a motor vehicle, § 29-38) only and the case is remanded with direction to render judgment that the defendant is not guilty on that count.

In this opinion the other judges concurred.