STATE OF CONNECTICUT *v.* LESTER M. ALLEN
(13113)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and GLASS, Js.

*(One justice dissenting)*

Argued September 29—decision released November 24, 1987

*Martin Zeldis,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Jonathan C. Benedict,* assistant state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. After a jury trial, the defendant, Lester M. Allen, was found guilty of assault in the first degree in violation of General Statutes § 53a-59 (a) (1), assault on a peace officer in violation of General Statutes § 53a-167c (a) (1), attempted murder in violation of General Statutes §§ 53a-54a (a) and 53a-49, and having a weapon in a motor vehicle in vio-

lation of General Statutes § 29-38. The defendant was sentenced to a prison term of not less than twenty years and not more than thirty years.[1] The defendant appealed to the Appellate Court which affirmed the convictions. *State* v. *Allen,* 9 Conn. App. 169, 517 A.2d 1043 (1986). This court granted the defendant's petition for certification.[2]

The sole question presented by this appeal is whether the Appellate Court erred in failing to find an abuse of discretion when the trial court permitted the state to reopen its case after it had rested and after the defendant's motion for judgment of acquittal had been denied. We reverse the Appellate Court and remand to that court to remand to the trial court with direction to render a judgment of acquittal on the charge of having a weapon in a motor vehicle.

The jury could reasonably have found the following facts: On September 20, 1980, officer Thomas Masterson of the Stratford police department observed a car with an expired registration. After the officer had

---

[1] The defendant was sentenced to a term of imprisonment of not less than ten years and not more than twenty years on the charge of attempted murder. On the charge of assault in the first degree, the defendant was sentenced to a term of imprisonment of not less than ten years and not more than twenty years, this sentence to run concurrently to the attempted murder sentence. On the charge of assault of a peace officer, the defendant was sentenced to a term of imprisonment of not less than five years and not more than ten years, this sentence to run consecutively to the attempted murder and assault in the first degree sentences. On the charge of having a weapon in a motor vehicle, the defendant was sentenced to a five year term of imprisonment to run consecutively to the other sentences. The defendant will not commence serving his sentence in Connecticut until he completes a Georgia sentence which he is currently serving.

[2] This court limited its grant of certification to the following question: "On the charge of having a weapon in a motor vehicle in violation of General Statutes section 29-38, did the Appellate Court err in upholding the ruling of the trial court permitting the state to reopen its case-in-chief in order to present evidence of the length of the barrel of the firearm after the defendant's motion for acquittal based upon the lack of such evidence had been denied?"

stopped the defendant's car and as the officer was exiting his patrol car, the defendant took a gun from his pocket and fired a total of four shots before fleeing the scene. The defendant was found and arrested in Georgia three years after the incident.

The following background facts that occurred at trial are not in dispute. In the substitute information, the state charged that the defendant "did knowingly have in a motor vehicle occupied by him, a certain pistol, without a legal permit therefore [sic]" in violation of General Statutes § 29-38. After the state had rested its case, the defendant moved for judgment of acquittal on the charge of having a weapon in a motor vehicle, claiming that the state had not established a prima facie case under § 29-38.[3] The defendant at that time argued that the state had failed to establish that the weapon was a pistol within the meaning of the statute by failing to offer any evidence on the length of its barrel. See *State* v. *Brown*, 173 Conn. 254, 260, 377 A.2d 268 (1977). Under General Statutes § 29-27,[4] which controls § 29-38, a pistol or revolver is a firearm having

---

[3] General Statutes (Rev. to 1979) § 29-38 provides: "WEAPONS IN VEHICLES. Any person who knowingly has, in any vehicle owned, operated or occupied by him, any weapon for which a proper permit has not been issued as provided in section 29-28 or section 53-206, or has not registered such weapon as required by section 53-202, as the case may be, shall be fined not more than one thousand dollars or imprisoned not more than five years or both, and the presence of any such weapon in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof. The word 'weapon,' as used in this section, means any pistol or revolver, any dirk knife or switch knife or any knife having an automatic spring release device by which a blade is released from the handle, having a blade of over one and one-half inches in length, and any other dangerous or deadly weapon or instrument, including any slung shot, black jack, sand bag, metal or brass knuckles or stiletto or any knife, the edged portion of the blade of which is four inches or over in length."

[4] General Statutes § 29-27 provides: " 'PISTOL' AND 'REVOLVER' DEFINED. The term 'pistol' and the term 'revolver,' as used in sections 29-28 to 29-38, inclusive, mean any firearm having a barrel less than twelve inches in length."

a barrel of less than twelve inches in length. The defendant was apparently confused about the applicable statute, claiming that General Statutes § 53a-3 (18)[5] governed the definition of a pistol for violations of § 29-38. This apparent confusion makes no real difference because the definition of a pistol or revolver is exactly the same under both statutes: it is a firearm with a barrel less than twelve inches in length. Thus, although the defendant did not cite the applicable statute, he correctly stated the law on that issue. The state also had overlooked the applicability of § 29-27 but argued that no definition of a pistol or revolver applied and asserted that having any weapon in a motor vehicle without a permit violated § 29-38. The court agreed with the state and denied the defendant's motion.

On the next court day, before the defendant had begun to present his case, the state moved to reopen its case-in-chief in order to present evidence on the length of the barrel of the firearm. In its argument to reopen, the state claimed that although the defendant's argument was incorrect, the state nevertheless was "hedging [its] bet" because "[the state was] afraid the Supreme Court may determine that the penal code definition of pistol should be grafted on to the weapon in a motor vehicle statute . . . and [it would] rather be safe than be sorry." Accepting this argument, the court granted the motion over the defendant's objection and Masterson, the victim of the shooting who had testified earlier, then testified that the barrel length was approximately two inches.

The defendant argues that the trial court's decision to allow the reopening of the state's case-in-chief vio-

---

[5] General Statutes § 53a-3 (18) provides: "DEFINITIONS. Except where different meanings are expressly specified, the following terms have the following meanings when used in this title . . .

"(18) 'Pistol' or 'revolver' means any firearm having a barrel less than twelve inches."

lated the double jeopardy provision of the fifth amendment to the United States constitution and was an abuse of its discretion. Although the defendant claimed in his brief that the denial of his motion for judgment of acquittal implicated the prohibition against double jeopardy, he conceded at oral argument before us that the entire issue was better analyzed as a claim of an abuse of discretion. The defendant maintains that to permit the state to reopen its case-in-chief after the defendant has pointed out in his motion for judgment of acquittal the specific particulars why the state had failed to present a prima facie case rewards the state for its "laxity" and in practical effect turns the defendant's attorney into a prosecutorial arm of the state.

The state, on the other hand, although it agrees that a defendant might be penalized by a timely and meritorious motion for judgment of acquittal, asserts that the reopening in this case filled an evidentiary gap which contributed to "the search for facts and truth" and is, thus, perfectly proper. *State* v. *Allen,* supra, 174.

The Appellate Court agreed with the defendant that the state had the burden to prove that the firearm met the statutory definition of a pistol. Id., 172, citing *State* v. *Brown,* supra, 260. Noting that the pistol itself was not in evidence, the Appellate Court held that "initially '[t]he state failed to introduce any evidence upon which the jury could find that the barrel of the firearm was in fact less than twelve inches in length.' " *State* v. *Allen,* supra.

The Appellate Court recognized that the defendant was "in a sense penalize[d]" by making such a motion and that a reopening could discourage him from doing so and could encourage him to wait to make such a motion until the last available moment in hopes that the missing evidence became unavailable. Id., 174. The court, however, also maintained that " ' "a trial is not

a game of technicalities, but one in which the facts and truth are sought." *Eskridge* v. *State,* 258 Ind. 363, 369, 281 N.E.2d 490 (1972).' " *State* v. *Allen,* supra, quoting *State* v. *Zayas,* 195 Conn. 611, 623, 490 A.2d 68 (1985) (*Healey, J.,* dissenting).

Balancing these two competing concerns, the Appellate Court relied on the "traditional rule" that either party may present omitted or further evidence " ' "when *mere inadvertence or some other compelling circumstance* . . . justifies a reopening and no substantial prejudice will occur." ' (Emphasis added.) [*State* v. *Brigandi,* 186 Conn. 521, 546, 442 A.2d 927 (1982)], quoting *United States* v. *Hinderman,* 625 F.2d 994, 996 (10th Cir. 1980)." *State* v. *Allen,* supra, 175. The Appellate Court attributed the state's failure to introduce evidence of the length of the gun barrel to the state's own misperception, compounded by a different misperception by the defendant. Id., 176. That court concluded that these circumstances demonstrated that the state's evidentiary failure was inadvertent and that this case presented a compelling circumstance for granting the motion to reopen. Id. The Appellate Court also ruled that the defendant suffered no "legal prejudice." Id.

We begin our analysis by recognizing the fundamental concept that the state has the burden of proving every element of an alleged crime beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Griffin,* 175 Conn. 155, 162, 397 A.2d 89 (1978). The defendant's presumption of innocence until proven guilty is an "axiomatic and elementary" principle whose "enforcement lies at the foundation of the administration of our criminal law." *Coffin* v. *United States,* 156 U.S. 432, 453, 15 S. Ct. 394, 39 L. Ed. 481 (1895). A criminal defendant has the right to put the state to its burden and need not defend until and unless the state has presented a prima facie case. "The defendant, under our Constitution,

need not do anything at all to defend himself, and certainly he cannot be required to help convict himself." *Williams* v. *Florida,* 399 U.S. 78, 112, 90 S. Ct. 1893, 26 L. Ed. 2d 446 (1970) (Black, J., dissenting). " 'One of the greatest safeguards for the individual under our system of criminal justice is the requirement that the prosecution must establish a prima facie case by its own evidence before the defendant may be put to his defense. "Ours is the accusatorial as opposed to the inquisitorial system. . . . Under our system society carries the burden of proving its charge against the accused not out of his own mouth. It must establish its case, not by interrogation of the accused even under judicial safeguards, but by evidence independently secured through skillful investigation." ' *Cephus* v. *United States,* 324 F.2d 893, 895 (D.C. Cir. 1963), quoting *Watts* v. *Indiana,* 338 U.S. 49, 54, 69 S. Ct. 1347, 93 L. Ed. 1801 (1949) . . . ." *State* v. *Rutan,* 194 Conn. 438, 443, 479 A.2d 1209 (1984).

In this case, the state failed to introduce any evidence as to the length of the barrel of the pistol, admittedly an essential element of the crime of having a weapon in a motor vehicle. *State* v. *Brown,* supra. As the state conceded at oral argument before us, had the defendant remained silent until after the verdict had been rendered, the omission of this evidence would have required a judgment of acquittal either in the trial court or on appeal. With the review of an alleged deprivation of a fundamental constitutional right permitted under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), together with the federal constitutional requirements of *In re Winship,* supra, the defendant would have been entitled to prevail on appeal.

The defendant, instead, made a motion for judgment of acquittal under Practice Book § 883.[6] The defend-

---

[6] Practice Book § 883 provides: "Motions for a directed verdict of acquittal and for dismissal when used during the course of a trial are abolished.

ant even cited *State* v. *Brown,* supra, as governing the outcome of the issue in this case. Having specifically brought this evidentiary gap to the attention of the state, the defendant was effectively victimized by his own diligence as the state used the reopening to supply the missing element of the crime, thus assuring the defendant's conviction.

Practice Book § 883 permits the defendant to make a motion for judgment of acquittal and thus avoid presenting a defense if the state has not made out a prima facie case. If the evidence would not reasonably permit a finding of guilty, § 883 provides that the "judicial authority *shall* order the entry of a judgment of acquittal . . . . " (Emphasis added.) In testing whether the evidence is sufficient to sustain a verdict on a § 883 motion, this court has held that, "[e]ach essential element of the crime charged must be established by such proof . . . . " *State* v. *Saracino,* 178 Conn. 416, 419, 423 A.2d 102 (1979). This case was an appropriate one for such a motion to be granted as the state had not made out a prima facie case that the defendant had violated General Statutes § 29-38 because no evidence concerning the length of the gun barrel had been presented.

An important concern in this case is the viability of Practice Book § 883 in circumstances such as this. If we hold that it is not an abuse of discretion to allow the state to supply evidence of a missing element of a crime identified by the defendant in his motion for

Motions for a judgment of acquittal shall be used in their place. After the close of the prosecution's case in chief or at the close of all the evidence, upon motion of the defendant or upon his own motion, the judicial authority shall order the entry of a judgment of acquittal as to any principal offense charged and as to any lesser included offense for which the evidence would not reasonably permit a finding of guilty. Such judgment of acquittal shall not apply to any lesser included offense for which the evidence would reasonably permit a finding of guilty."

judgment of acquittal after the state has rested, would any competent defense attorney ever make such a motion again? As the state conceded at oral argument, § 883 would become a "dead letter" if the subject matter of the motion clearly concerned an element of the crime. As the United States Supreme Court has observed, "[t]hat any judicial system should encourage litigants to raise objections at the earliest rather than the last possible time seems self-evident." *United States* v. *Tateo,* 377 U.S. 463, 468 n.4, 84 S. Ct. 1587, 12 L. Ed. 2d 448 (1964). In this type of case, however, the latter would occur if we sustained the action of the Appellate Court. Rather than make this motion at the close of the state's case or even at any time before the jury has rendered a verdict, the defendant would be well advised to wait to make his constitutional claim on appeal.

Although we agree that an important function of a trial is a "search for facts and truth"; *State* v. *Allen,* supra, 174; a trial must also be fair. *State* v. *Corchado,* 200 Conn. 453, 459, 512 A.2d 183 (1986) ("discretion to be exercised must be informed and guided by considerations of fundamental fairness that are ingrained in the concept of due process of law"). " 'Every accused is entitled to a fair trial . . . at which the legal rights of the accused are safeguarded and respected.' *Wojculewicz* v. *Cummings,* 143 Conn. 624, 632–33, 124 A.2d 886 (1956)." *State* v. *Lovelace,* 191 Conn. 545, 553, 469 A.2d 391 (1983), cert. denied, 465 U.S. 1107, 104 S. Ct. 1613, 80 L. Ed. 2d 142 (1984). The time when the state rests its case-in-chief marks an important juncture in a criminal trial. It is " '[t]o bring to an end voluntarily the introduction of evidence, the right to introduce fresh evidence, except in rebuttal, being thereupon lost.' " *State* v. *Martin,* 53 N.M. 413, 417, 209 P.2d 525 (1949). The state, which has the burden to prove every element of the crimes charged beyond

a reasonable doubt, is required to present enough evidence so that a jury could reasonably find the defendant guilty; failing such an evidentiary showing, it risks a successful motion for judgment of acquittal. Practice Book § 883. In *United States* v. *Hinderman,* supra, 996, the court warned that "the government's case-in-chief should not be treated as an experiment that can be cured after the defendant has, by motion, identified the failures." The California Supreme Court has recognized that "to require a defendant to state specific grounds in support of the motion for acquittal would place the burden upon him to point out to the prosecutor, as well as to the court, the gaps in the prosecution's case. Such a requirement would come perilously close to compelling a defendant to aid in his own prosecution and would lessen the prosecutor's burden to prove each and every element of the case beyond a reasonable doubt." *People* v. *Belton,* 23 Cal. 3d 516, 522, 591 P.2d 485, 153 Cal. Rptr. 195 (1979).

We recognize the wide discretion enjoyed by the trial court to permit the reopening of a case after either side has rested. *State* v. *Ricker,* 90 Conn. 147, 152, 96 A. 941 (1916). " ' "The reopening of a criminal case either to present omitted evidence or to add further testimony after either of the parties has rested is within the sound discretion of the Trial Court. [Citations omitted]." *United States* v. *Wilcox,* 450 F.2d 1131, 1143 (5th Cir. 1971).' *United States* v. *Sisack,* 527 F.2d 917, 919 (9th Cir. 1976)." *State* v. *Brigandi,* 186 Conn. 521, 545–46, 442 A.2d 927 (1982). " '[T]he trial court must be vested with discretion to permit reopening when mere inadvertence or some other compelling circumstance . . . justifies a reopening and no substantial prejudice will occur.' " Id., 546, quoting *United States* v. *Hinderman,* supra. Although this discretion has been used in the past with this court's approval, a careful examination of the precedents will reveal that the precise facts and

procedural posture of this case are significantly different. We reach the result in this case without interfering with a trial court's discretion to permit a reopening under appropriate circumstances in a future case.

The state, in its brief, refers to numerous precedents in Connecticut which it claims support its argument that the reopening was not an abuse of the trial court's discretion. We agree that earlier Connecticut cases have permitted reopenings but there were different circumstances from those in the present case.

It has been held not to be an abuse of discretion for the trial court to permit a reopening when a witness is recalled to elaborate or explain the testimony he has already given. *State* v. *Brigandi,* supra; *State* v. *Ricker,* supra, 153. Both the Appellate Court and the state rely heavily on the language in *State* v. *McKnight,* 191 Conn. 564, 579, 469 A.2d 397 (1983), that a reopening during a jury's deliberations is permitted "where an essential element has been overlooked." *McKnight* is inapposite; it did not involve a reopening going to an essential element of the crime charged but discussed the *defendant's* request to reopen to permit a late-appearing witness to testify. The holding in that case was an affirmance of the denial to reopen on that *defendant's* motion. See also *State* v. *Holmquist,* 173 Conn. 140, 151–52, 376 A.2d 1111, cert. denied, 434 U.S. 906, 98 S. Ct. 306, 54 L. Ed. 2d 193 (1977); *State* v. *Swift,* 125 Conn. 399, 405, 6 A.2d 359 (1939). Obviously, when a defendant moves to reopen, he is not concerned with supplying a missing element of a crime. Thus, the language of *McKnight* is not supportive of the state's position.

*State* v. *Watson,* 165 Conn. 577, 345 A.2d 532 (1973), cert. denied, 416 U.S. 960, 94 S. Ct. 1977, 40 L. Ed. 2d 311 (1974), is another case heavily relied upon by the state. There the state reopened its case to present

evidence that a codefendant had not possessed a permit for a gun, a fact that would have relieved the four codefendants of the crime of having weapons in a motor vehicle. In that case, however, the defendant did not file a motion for judgment of acquittal and thus the defendant was not the one responsible for pointing out the potential evidentiary gap in the state's case. In addition, the court's discussion of the reopening of the case was essentially dictum, since the court determined that a remand for a new trial was required because of a constitutional infirmity in the underlying statute. See *State* v. *Zayas,* supra, 623 n.4 (*Healey, J.,* dissenting).

In *State* v. *Zayas,* supra, the trial court permitted the state to reopen its case to introduce the time of sunset after a motion for judgment of acquittal by the defendant had pointed out that the state had failed to introduce any evidence that an alleged burglary had taken place at night. Although this court affirmed the conviction, it found that reopening the case was unnecessary because the court had the power to take judicial notice of the time of sunset. Id., 615. Since judicial notice can be taken at any stage of the proceedings including on appeal; *Nichols* v. *Nichols,* 126 Conn. 614, 620–21, 13 A.2d 591 (1940); Fed. R. Evid. 201 (f); it did not matter whether or when the defendant pointed out the evidentiary gap. The fact that the time of sunset could be recognized by the court at any stage of the proceedings means that the defendant would never have been able to prevail on that issue, either at trial or on appeal. Thus, the issue of judicial notice makes *Zayas* significantly different from the facts of the present case. The state conceded at oral argument that *Zayas* is not controlling.

The only case in our jurisdiction that comes close to the facts of the present case is *State* v. *Levy,* 103 Conn. 138, 145, 130 A. 96 (1925). There, after the state had rested, the defendant made a motion to dismiss on the

grounds that no evidence was presented on whether the beer was made from hops, malt or barley, a necessary element of the crime of illegally transporting intoxicating liquor. The trial court then permitted the state to reopen its case and present such evidence. We note that the state in *Levy,* unlike the state in this case, in resisting Levy's claim, maintained that it *had not* failed to prove the alleged missing element. The state argued both that enough evidence was present and that the reopening was appropriate. In contrast, the state in the present case has conceded that the evidence presented in its case-in-chief was insufficient.

We also point out that in the present case the state offered new evidence on reopening and did not merely offer cumulative evidence or clarify previous testimony. An examination of the transcript shows that when Masterson originally testified on direct examination, he was unable to identify the weapon that was used against him.[7] It was only after the reopening and after the state had been unable to establish adequately a prima facie case that Masterson testified about the length of the gun barrel.[8] These facts strengthen our conclusion that allowing the state to reopen its case-

[7] Masterson testified in part on direct examination as follows:

"Q. And were you able to see the weapon that was fired?

"A. Yes, I did.

"Q. Can you describe that in any way?

"A. It was a revolver and it was either nickel or chrome or shiny on the front of the cylinder."

[8] After the case was reopened, Masterson testified in part on direct examination as follows:

"Q. . . . [W]ere you able to notice the length of the barrel of—I think you described it as a revolver that he fired at you?

"A. That is correct.

"Q. Would you give the jury an estimate of how long just the barrel portion of the revolver was?

"A. Approximately a two inch barrel on the revolver."

Masterson testified in part on cross-examination as follows:

"Q. You don't know where this weapon came from. You never had any side view of the weapon?

in-chief after the defendant has identified its shortcomings was fundamentally unfair to the defendant and an abuse of the trial court's discretion. *People* v. *Belton,* supra, 523.

The notion that the defendant somehow induced this error by overlooking the applicable statute should also be dispelled. Both the Appellate Court in *State* v. *Allen,* supra, 175–76, and the state in its brief intimate that the defendant's citation of the incorrect statute (although identical to the proper statutory provision) led the trial court to overlook the correct statute. The transcript clearly shows, however, that the defendant never mentioned the incorrect statute at issue until *after* the state had rested. Thus, it is the state that is solely responsible for its failure to produce evidence on the length of the gun's barrel, concededly an element of the crime under General Statutes § 29-38. It can hardly be said that the state or the court was led to an incorrect decision by the defendant's incorrect citation. Rather than considering the applicable statute on the length of the barrel, the trial court agreed with the state that having *any* weapon in a motor vehi-

---

"A. Not a side view.

"Q. Approximately how far away were you?

"A. From me to you.

"Q. Okay. Further than the distance of a car length? Withdraw that. I believe you testified on direct that you were at least 12 to 15 feet away; is that correct?

"A. I believe so. I don't remember.

"Q. That's your testimony now that the barrel of the gun is approximately two inches long?

"A. Approximately.

"Q. Did you ever see the barrel itself?

"A. Yes, I did.

"Q. Other than the cylinder, you saw the barrel?

"A. Yes.

"Q. You didn't previously testify to that though. The first testimony of that is today; is that correct?

"A. That is correct."

cle contravened the statute charged in the information. We cannot conclude that the defendant misled either the state or the court to their detriment.

Our holding in this case does not preclude a trial court from exercising its discretion to reopen a case. We only hold that when the state has failed to make out a prima facie case because insufficient evidence has been introduced concerning an essential element of a crime and the defendant has specifically identified this evidentiary gap in a motion for judgment of acquittal, it is an abuse of the trial court's discretion to permit a reopening of the case to supply the missing evidence.

The judgment of the Appellate Court is reversed and the case is remanded to that court to remand the case to the trial court with direction to render a judgment of acquittal on the charge of having a weapon in a motor vehicle in violation of General Statutes § 29-38.

In this opinion PETERS, C. J., SHEA and GLASS, Js., concurred.

CALLAHAN, J., dissenting. I respectfully dissent. I do not believe that the trial court abused its broad discretion in this area by allowing the state to reopen its case-in-chief and present additional evidence regarding the length of the gun barrel.

Although it is, perhaps, unfortunate for this defendant that he brought the deficiency in the state's case to its attention, I fail to see that he has suffered any legal prejudice. The additional evidence was no more detrimental to him when offered than it would have been if offered on the state's case-in-chief. *Lucas* v. *United States,* 343 F.2d 1, 3 (8th Cir. 1965). Further, he had a full opportunity to meet and rebut the additional evidence presented. *State* v. *Ricker,* 90 Conn. 147, 152–53, 96 A. 941 (1916).

I agree with the Appellate Court that " ' "a trial is not a game of technicalities, but one in which the facts and truth are sought." . . . ' " (Citations omitted.) *State* v. *Allen,* 9 Conn. App. 169, 174, 517 A.2d 1043 (1986). That means to me that an obviously guilty defendant should not be acquitted because of inadvertence or mistake, no matter how brought to light, when any lapse or error can be corrected. In this particular case our holding is, perhaps, of no great significance because this defendant was convicted of more serious crimes. I fear, however, that limiting the discretion of the trial court in the manner we have will result in serious and regrettable consequences down the road.

I also do not believe that the spectre, raised by the majority, of possibly eliminating the usefulness of Practice Book § 883 is real. If the state does not present evidence of all the elements of a crime on its case-in-chief, the usual reason is that the evidence is not available. It is that situation that I think a motion for acquittal under Practice Book § 883 was intended to address and would continue to be used to address.

I would affirm the judgment of the Appellate Court.