## STATE OF CONNECTICUT *v.* KEVIN ROBINSON
### (SC 18115)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued January 15—officially released February 10, 2009

*Natalie C. Rezek,* certified legal intern, with whom was *Elizabeth M. Inkster,* senior assistant public defender, for the appellant (defendant).

*Mitchell S. Brody,* senior assistant state's attorney, with whom, on the brief, were *David I. Cohen,* state's attorney, and *Michael A. DeJoseph,* assistant state's attorney, for the appellee (state).

*Opinion*

PER CURIAM. The sole issue in this certified appeal is whether probable cause existed to arrest the defendant, Kevin Robinson, for criminal trespass in the third degree in violation of General Statutes § 53a-109 (a) (1),[1] when the opening in the concrete wall in the front of the premises at issue did not have a gate, and there was no sign prohibiting entry posted on the premises. The defendant appeals, upon our grant of his petition for certification,[2] from the judgment of the Appellate Court affirming his judgment of conviction "of (1) possession of narcotics, namely, one-half gram or more of cocaine in a freebase form, with intent to sell or dispense by a person who is not drug-dependent in violation of General Statutes (Rev. to 2003) § 21a-278 (a), (2) possession of narcotics, namely, cocaine in a freebase form, with intent to sell or dispense within 1500 feet of a school in violation of General Statutes § 21a-278a (b), (3) possession of a hallucinogenic substance, namely, phencyclidine, in violation of General Statutes § 21a-279 (b), and (4) possession of a hallucinogenic substance, namely, phencyclidine, within 1500 feet of a school in violation of . . . § 21a-279 (d)." *State* v. *Robinson*, 105 Conn. App. 179, 181–82, 937 A.2d 717 (2008). On appeal, the defendant contends that the

---

[1] General Statutes § 53a-109 (a) provides in relevant part: "A person is guilty of criminal trespass in the third degree when, knowing that such person is not licensed or privileged to do so: (1) Such person enters or remains in premises which are posted in a manner prescribed by law or reasonably likely to come to the attention of intruders or are fenced or otherwise enclosed in a manner designed to exclude intruders . . . ."

[2] We granted the defendant's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that the state had probable cause to arrest the defendant for criminal trespass in violation of . . . § 53a-109 (a) (1) even though no sign prohibiting entry was posted on the premises where the defendant was apprehended and there was a gateless opening in the front concrete wall of those premises?" *State* v. *Robinson*, 286 Conn. 902, 943 A.2d 1102 (2008).

Appellate Court, in a divided opinion, improperly upheld the trial court's denial of his motion to suppress evidence found upon his person during the search incident to his warrantless misdemeanor arrest, on the ground that the police lacked probable cause to arrest him for criminal trespass in the third degree. We disagree and, accordingly, we affirm the judgment of the Appellate Court.

The majority opinion of the Appellate Court aptly sets forth the following relevant facts and procedural history. "On March 4, 2004, the [Norwalk police department] special services division focused on 75 South Main Street because residents of that building had complained about drug dealers loitering in and selling drugs in the front yard of the premises. The premises consisted of a multifamily housing unit, with a front courtyard and a parking lot. A cement wall, about four feet high, stood between the courtyard and the sidewalk adjoining the street. A chain-link fence surrounded the other three sides of the premises. A gateless entryway in the wall facing the street allowed pedestrians to access the courtyard. A set of stairs led from the sidewalk up to the entryway in the wall. As the officers drove by the premises, [Officer Marc] Lepore noticed the defendant and a woman standing in the front courtyard. Lepore knew the woman from previous arrests, including arrests for possession of narcotics. As the officers approached the premises, the woman noticed Lepore and said something to the defendant. Lepore then observed the defendant duck down behind the wall that was between the courtyard and the street. The officers entered into the courtyard through the gateless opening in the wall. Lepore noticed that the defendant was squatting down and had his right hand down the back of his pants, 'fiddling around with something.' Because of his training and experience, Lepore knew that some drug dealers hid drugs down their pants and between their buttocks to evade detection. Lepore asked the defendant what he was doing. The defendant

answered that he was tying his shoe, an answer that the officer did not believe because it was inconsistent with the position of the defendant's hands.

"Lepore then asked the defendant whether he lived in the building. The defendant answered that he did not. Lepore further asked whether the defendant was on the premises visiting someone. The defendant again answered no. The officer then arrested the defendant for criminal trespass." Id., 186–87. The defendant " 'freaked out' " when Lepore patted the seat of his pants during the patdown search, which prompted Lepore and other officers to strip search him at the police station, revealing a plastic bag hidden between his buttocks. Id., 187–88. The bag held "seventeen packets containing crack cocaine; one plastic bag containing loose cocaine; and two plastic ziplock bags containing marijuana laced with angel dust." Id., 185.

"The defendant was charged in a four count information alleging the four drug offenses noted. Prior to trial, he moved to suppress certain tangible evidence that had been seized from his person following his warrantless arrest for criminal trespass in the third degree in violation of . . . § 53a-109 (a) (1). After an evidentiary hearing, the court, *Dooley, J.*, denied the motion to suppress. Thereafter, the defendant waived his right to a jury trial, and, after a trial to the court, *Jennings, J.*, the court found him guilty on all four counts and rendered the judgment of conviction." Id., 182–83.

The defendant appealed from the judgment of conviction to the Appellate Court, and claimed, inter alia,[3] that the trial court should have granted his motion to

_____

[3] In addition to his probable cause claim, the Appellate Court also rejected the defendant's claims that: (1) the strip search violated General Statutes §§ 54-33k and 54-33*l*; (2) the police lacked the "reasonable and articulable suspicion that the defendant is carrying contraband or a weapon" necessary to justify a warrantless strip search incident to a misdemeanor arrest; (3) the search was a "body cavity search" conducted in violation of the procedures set forth in § 54-33*l* (b); and (4) the conviction under § 21a-278 (a)

suppress the evidence found upon his person during a search incident to a warrantless misdemeanor arrest because "the absence of a gate at the opening for pedestrian traffic establishes that the premises were not 'fenced or otherwise enclosed in a manner designed to exclude intruders,' and, therefore, as a matter of law, there was no probable cause for his [underlying] arrest" for criminal trespass in the third degree in violation of § 53a-109 (a) (1). Id., 190. The Appellate Court majority rejected the defendant's claims, and affirmed the judgment of conviction.[4] Id., 201. This certified appeal followed.

"Our examination of the record and briefs and our consideration of the arguments of the parties persuades us that the judgment of the Appellate Court should be affirmed on the certified issue. The Appellate Court [majority] properly resolved that issue in its concise and well reasoned opinion. Because that opinion fully addresses all arguments raised in this appeal, we adopt it as a proper statement of the issue and the applicable law concerning that issue. It would serve no useful purpose for us to repeat the discussion contained therein." *Ruotolo* v. *Tietjen*, 281 Conn. 483, 486, 916 A.2d 1 (2007); see also *Hardt* v. *Watertown*, 281 Conn. 600, 604, 917 A.2d 26 (2007).

The judgment of the Appellate Court is affirmed.

---

must be reversed under the rule of *Apprendi* v. *New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). *State* v. *Robinson*, supra, 105 Conn. App. 196–200. These claims are not before us in this certified appeal.

[4] Judge Bishop dissented from the judgment of the Appellate Court, stating that although he "agree[d] with [his] colleagues in the majority that once the police took the defendant . . . into custody, they had the right to search him as they did, [he did] not believe that the police had probable cause to arrest the defendant for criminal trespass in the third degree . . . ." *State* v. *Robinson*, supra, 105 Conn. App. 201.