STATE OF CONNECTICUT *v.* JASON FREEMAN
(AC 32422)

Beach, Bishop and Mihalakos, Js.

Submitted on briefs September 6—officially released December 13, 2011

*Lisa A. Vanderhoof*, special public defender, filed a brief for the appellant (defendant).

*John C. Smriga*, state's attorney, *Linda Currie-Zeffiro*, assistant state's attorney, and *Pamela J. Esposito*, senior assistant state's attorney, filed a brief for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Jason Freeman, appeals from the judgment of conviction, rendered following a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (1), assault of a victim sixty years of age or older in the first degree in violation of General Statutes § 53a-59a (a) (1), assault in the first degree in violation of General Statutes § 53a-59 (a) (3) and carrying a pistol without a permit in violation of General Statutes § 29-35 (a). The defendant claims that the trial court (1) abused its discretion by granting the state's motion to reopen pretrial suppression hearing testimony after the defendant identified a

possible deficiency in the state's case, and (2) improperly denied his motions to suppress statements and evidence obtained following his arrest by law enforcement officials.

We conclude that the court did not abuse its discretion by reopening pretrial suppression hearing testimony and did not improperly deny the defendant's motions to suppress, and therefore, we affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the afternoon of March 31, 2008, the eighty-two year old victim, Eli Caviness, was robbed at gunpoint while seated in his parked vehicle next door to a multifamily home at 1016 Stratford Avenue in Bridgeport. The victim was shot in the shoulder during the course of the robbery. The following day, the victim gave a statement to Ada Curet and Lynn Gorman, detectives with the Bridgeport police department, identifying his assailant as a black male between the ages of twenty-four and twenty-five and approximately five feet, seven inches or five feet, eight inches in height. On the basis of this conversation, Curet and Gorman returned to the scene of the crime to ascertain the identity of the assailant. The detectives spoke with Tiyonna Beckwith, who was a cousin of the defendant, and a resident of the multifamily home at 1016 Stratford Avenue. Beckwith, who had also spoken with Curet on the day of the robbery and shooting, identified the defendant as a possible suspect, and provided the detectives with his name and physical description. On the basis of that information, Curet was able to obtain the defendant's photograph and background information through the police database.

Later that day, law enforcement received another tip: an anonymous call to the police communication center indicated that the person responsible for the robbery

and shooting of the victim was en route to the local bus station via taxicab. The caller provided the name of the alleged suspect and indicated that he was wearing a dark colored hooded sweatshirt. On the basis of that information, Curet and Gorman, along with other law enforcement officers, went to the bus station to intercept the suspect. They observed two black males, who were carrying large duffel bags, exit a taxicab. Curet identified herself as a law enforcement officer, and called out to the men to stop. Both men ignored her command and kept walking. The police then surrounded the two individuals, and asked them to identify themselves. One of the men indicated that his name was James. Curet, however, who was carrying a photograph of the defendant, was able to determine that this man was, in fact, the defendant. Questioning of the two individuals revealed that the other man present with the defendant was his brother, Patrick Freeman. The two were taken into custody.[1] During the course of the arrest, $1236 was recovered from the defendant's person.

At the detective bureau, Curet informed the defendant of his constitutional rights, obtained a written waiver of those rights, and thereafter recorded a statement in which the defendant admitted robbing and shooting the victim. The defendant specifically indicated that he smashed the victim's driver side window, demanded the victim's money at gunpoint, and that when the victim resisted, he reached into the victim's pocket and stole cash from his person, cutting his hand on the window's broken glass in the process. The defendant claimed that his "gun went off," and that he, therefore, inadvertently shot the victim in the right shoulder.

---

[1] Patrick Freeman was taken into custody because there was an outstanding warrant for his arrest.

The police also obtained a written statement from Beckwith that detailed her recollection of events immediately following the crime. She indicated that she heard a gunshot, which prompted her to look out her bathroom window at 1016 Stratford Avenue and see a person in a grey, hooded sweatshirt and blue jeans running away from the van that she recognized as belonging to the victim. Ten minutes later, she received a call from the defendant, who requested that she pick him up at a location near the scene of the shooting. Beckwith heeded his request and later drove the defendant to his brother's home. She also indicated that later that evening she overheard the defendant, who was talking on his cell phone walkie-talkie, say that he had shot someone earlier that day.

Prior to the state's case-in-chief, the defendant filed a motion to suppress evidence and a separate motion to suppress statements he made to the police subsequent to his arrest. These motions were based on his claim that law enforcement acted without a reasonable and articulable suspicion to stop him and probable cause to arrest him. On January 13, 2009, the court conducted an evidentiary hearing on those motions. The state called Curet, whose testimony detailed the investigation of the crime, including the defendant's ultimate arrest and admission. At the end of that hearing, the court indicated that it would make a ruling on the motions either the next day, or shortly thereafter; however, the following day, the state made an oral motion to reopen the testimony on the suppression hearing. That motion to reopen was in response to the defendant's argument that the state had failed to produce sufficient evidence to establish how law enforcement developed the defendant as a suspect. On January 15, 2009, the court granted the state's motion to reopen and subsequently heard testimony from Gorman. Gorman's testimony provided additional information

explaining how the police developed the defendant as a suspect. The next day, the court denied the defendant's motions to suppress. The matter then proceeded to trial. This appeal followed.

I

On appeal, the defendant claims that the court abused its discretion by granting the state's motion to reopen pretrial suppression hearing testimony, and, that it improperly denied his motions to suppress statements and evidence. We address whether the court abused its discretion by reopening pretrial suppression hearing testimony before considering the propriety of the court's decision to deny the defendant's motions to suppress. In regard to the former, we "recognize the wide discretion enjoyed by the trial court to permit the reopening of a case after either side has rested. . . . The reopening of a criminal case either to present omitted evidence or to add further testimony after either of the parties has rested is within the sound discretion of the [t]rial [c]ourt. . . . [T]he trial court must be vested with discretion to permit reopening when mere advertence or some other compelling circumstance . . . justifies a reopening and no substantial prejudice will occur." (Citations omitted; internal quotation marks omitted.) *State* v. *Allen*, 205 Conn. 370, 380, 533 A.2d 559 (1987); see also *State* v. *Brigandi*, 186 Conn. 521, 546, 442 A.2d 927 (1982).

The following additional facts are necessary for the resolution of this claim. After the state presented its evidence at the hearing on the motions to suppress, the defendant argued that the state had failed to meet its burden of proof with regard to establishing reasonable suspicion and probable cause. Specifically, the defendant argued that the state offered no testimony as to how law enforcement developed him as a suspect. The defendant argues that at that juncture in the case, the

record was devoid of testimony indicating "what prompted . . . Beckwith to point the finger at [the defendant]" or evidence suggesting "how the defendant's name and photo implicated him in the [underlying crime]." Indeed, it was in response to this argument, and prior to any ruling, that the state, realizing a possible deficiency in the evidence, moved to reopen pretrial testimony. The state now submits that the motion to reopen was merely a precautionary move designed to address only a *"potential* gap in the evidence"; (emphasis in original); and that, in any event, the court retains broad discretion to reopen pretrial testimony. The defendant argues that the court's reopening of the testimony rewards the state for its laxity, makes the defendant's attorney a prosecutorial arm of the state, and penalizes the defendant for having a competent defense attorney.

As an initial matter, we agree with the trial court's observation that there is an absence of case law in Connecticut "directly relating to the reopening of a suppression hearing to give more evidence." In *State v. Allen*, supra, 205 Conn. 370, however, our Supreme Court considered the question in a different context: whether a trial court abused its discretion by "permitt[ing] the state to reopen its case after it had rested and after the defendant's motion for judgment of acquittal had been denied." Id., 372. In that case, the state had charged the defendant with having a weapon in a motor vehicle in violation of General Statutes § 29-38. Id., 371–72. After the state had rested its case-in-chief, the defendant moved for a judgment of acquittal on that charge on the basis that the state had not established a prima facie case under § 29-38. Id., 373. The basis for that motion was that the state had failed to establish that the weapon was a pistol within the meaning of the statute because no evidence was offered on the length of the barrel. Id. It was in response to that motion that

the state moved, and the court granted, its motion to reopen its case-in-chief. The state then called a witness, who had testified earlier, to testify to the length of the pistol. See id., 374. On appeal, the Supreme Court found that the trial court abused its discretion by permitting the state to reopen its case-in-chief because defense counsel had pointed out the deficiencies in the state's case, the state conceded that the evidence was insufficient, and then, in response, the state offered new evidence as opposed to clarifying testimony. See id., 382–85. The defendant now cites *Allen* as authority for reversing the court's opening of pretrial suppression hearing testimony in this case.

Despite the defendant's argument to the contrary, the factual and legal circumstances in *Allen* are too far removed from those that presently concern us to have meaningful purchase in this analysis. The difference is one of both degree (the type of information omitted in that case) and proximity (the stage at which the omission was made). In regard to the former, the state in *Allen* failed to present evidence on an essential element of the crime charged; yet here, the state failed only to offer one piece of probative evidence establishing how it developed the defendant as a suspect. In regard to the latter, the trial court in *Allen* permitted the state to reopen after it had rested its case-in-chief, but in the present case, the trial court merely reopened pretrial testimony, which was well before the state's case-in-chief had begun, let alone ended. Even if the court did not permit the reopening of the suppression hearing for additional testimony, the state would not have been precluded from presenting evidence at trial establishing how the police developed the defendant as a suspect. Moreover, we also note that the Supreme Court was careful to at least implicitly limit the scope of its holding in *Allen*, stating: "We reach the result in this case without interfering with a trial court's discretion to permit a

reopening under appropriate circumstances in a future case." Id., 381.

Although the Supreme Court's context-specific analysis in *Allen* has limited application here, the broader import of that decision, nonetheless, was its reiteration of an appellate court's charge to balance two competing concerns in reviews of this type: the defendant's interest in fairness and the court's search for truth. See *State* v. *Mendoza*, 119 Conn. App. 304, 321, 988 A.2d 329, cert. denied, 295 Conn. 915, 990 A.2d 868 (2010). This means negotiating two potentially poor outcomes: on the one hand, permitting the state to reopen its case after the defendant has identified a deficiency rewards the state for its laxity and in practical effect makes the defendant a prosecutorial arm of the state; on the other hand, excessive procedural rigidity risks reducing the trial to "a game of technicalities . . . ." (Internal quotation marks omitted.) *State* v. *Allen*, supra, 205 Conn. 376.

In balancing these competing interests, we find that the reopening of pretrial testimony did not unduly prejudice the defendant nor reward the state for its laxity, but rather, aided the court in its search for truth. As the court acknowledged in its decision to reopen the suppression hearing, the state had testimony that would have addressed the evidentiary deficiency at its "fingertips," but appeared to merely have inadvertently excluded that testimony from the pretrial hearing. Nor did the reopening of the suppression hearing unduly prejudice the defendant. The additional testimony offered by Gorman was, as the trial court put it, "evidence that [came] as no surprise to the defendant; [it was] in all the disclosures. It [was] evidence that [would have been] presented during the case-in-chief itself." As our Supreme Court has noted in the context of the weightier question of whether to reopen a case-in-chief, "[t]he trial court must be vested with discretion to permit reopening when mere inadvertence or some other

compelling circumstance . . . justifies a reopening and no substantial prejudice will occur." (Internal quotation marks omitted.) *State* v. *Brigandi*, supra, 186 Conn. 546. We, therefore, conclude that the court did not abuse its discretion in reopening the suppression hearing testimony.[2]

## II

We now turn to the question of whether the court erred in denying the defendant's motions to suppress evidence and statements obtained pursuant to the defendant's arrest by law enforcement officials. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . ." (Internal quotation marks omitted.) *State* v. *Jenkins*, 298 Conn. 209, 222, 3 A.3d 806 (2010).

The defendant's motions to suppress were premised on his claim that the police had neither a reasonable and articulable suspicion to stop him nor the probable cause to arrest him. First, we consider whether law enforcement had a reasonable and articulable suspicion to stop the defendant. "Ordinarily, [w]hen considering the validity of a . . . stop, our threshold inquiry is twofold. . . . First, we must determine at what point, if any, did the encounter between [the police officer] and the defendant constitute an investigatory stop or seizure. . . . Next, [i]f we conclude that there was such a seizure, we must then determine whether [the police

---

[2] Because we find that the court did not abuse its discretion by reopening pretrial suppression hearing testimony, we also reject the defendant's argument that the reopening of pretrial testimony allowed the state to create a supplemental record for appellate review, thereby offering this court additional evidence justifying the trial court's denial of the defendant's motions to suppress.

officer] possessed a reasonable and articulable suspicion at the time the seizure occurred." (Internal quotation marks omitted.) *State* v. *Brown*, 279 Conn. 493, 516, 903 A.2d 169 (2006). It is not in dispute that the defendant was stopped by the police; therefore, we concern ourselves only with the latter inquiry.

"The determination of whether a reasonable and articulable suspicion exists involves a two-part analysis: (1) whether the underlying factual findings of the trial court are clearly erroneous; and (2) whether the conclusion that those facts gave rise to such a suspicion is legally correct." (Internal quotation marks omitted.) *State* v. *Wilkins*, 240 Conn. 489, 496, 692 A.2d 1233 (1997).

"Under the fourth amendment to the United States [c]onstitution and article first, §§ 7 and 9, of our state constitution, a police officer is permitted in appropriate circumstances and in an appropriate manner to detain an individual for investigative purposes if the officer believes, based on a reasonable and articulable suspicion that the individual is engaged in criminal activity, even if there is no probable cause to make an arrest. *Alabama* v. *White*, 496 U.S. 325, 330–31, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990); *Terry* v. *Ohio*, [392 U.S. 1, 22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)]; *State* v. *Mitchell*, 204 Conn. 187, 194–95, 527 A.2d 1168, cert. denied, 484 U.S. 927, 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987). Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have that level of suspicion. . . .

"In determining whether a detention is justified in a given case, a court must consider if, relying on the whole picture, the detaining officers had a particularized and objective basis for suspecting the particular person

stopped of criminal activity. When reviewing the legality of a stop, a court must examine the specific information available to the police officer at the time of the initial intrusion and any rational inferences to be derived therefrom." (Citation omitted; internal quotation marks omitted.) *State* v. *Clark*, 297 Conn. 1, 9–10, 997 A.2d 461 (2010).

"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary . . . it may be the essence of good police work to adopt an intermediate response. . . . A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." (Citation omitted.) *Adams* v. *Williams*, 407 U.S. 143, 145–46, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972).

Next we consider whether law enforcement had probable cause to arrest the defendant. "In order for a warrantless felony arrest to be valid, it must be supported by probable cause. . . . The determination of whether probable cause exists under the fourth amendment to the federal constitution . . . is made pursuant to a totality of circumstances test. . . . Probable cause exists when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that a felony has been committed. . . . The probable cause test then is an objective one." (Citations omitted; internal quotation marks omitted.) *State* v. *Johnson*, 286 Conn. 427, 435–36, 944 A.2d 297, cert. denied, 555 U.S. 883, 129 S. Ct. 236, 172 L. Ed. 2d 144 (2008). "Probable cause requires more than reasonable suspicion . . . but less than proof by a preponderance of the evidence."

(Citation omitted; internal quotation marks omitted.) *State* v. *Robinson*, 105 Conn. App. 179, 191, 937 A.2d 717 (2008), aff'd, 290 Conn. 381, 963 A.2d 59 (2009).

The defendant argues that the pretrial testimony revealed a lack of evidence to establish the requisite reasonable and articulable suspicion to stop him and the probable cause to arrest him. The defendant maintains this position despite the fact that the evidence provided by Gorman—who was allowed to testify when the pretrial suppression hearing was reopened— appears to have established how Beckwith came to know the defendant was involved in the crime.[3] Having found, however, that the pretrial hearing testimony was properly opened, and Gorman's testimony, therefore, properly considered, there is beyond any real doubt that law enforcement had probable cause to arrest (and reasonable suspicion to stop) the defendant.

We reach this conclusion on the basis that our Supreme Court has assigned great weight to knowledge provided to law enforcement by known informants who have "first-hand information" of a crime. (Internal quotation marks omitted.) *State* v. *Smith*, 257 Conn. 216, 225, 777 A.2d 182 (2001). In *Smith*, our Supreme Court found that an informant who had overheard the defendant planning or admitting criminal activity constituted a type of firsthand knowledge that was " 'highly relevant' " to establishing probable cause. Id.; see also *State* v. *Johnson*, supra, 286 Conn. 440 ("[e]stablishing an informant's basis of knowledge can . . . be an important part of assessing probable cause under the

---

[3] Relaying what Beckwith told law enforcement, Gorman testified: "[T]he day of the shooting, March 31st . . . between 8:00 and 8:30, she had been in the D&D Market on Connecticut Avenue. She said that she saw her cousin [the defendant] inside the store talking on his Nextel walkie-talkie to another man. *She said that she overheard [the defendant] say that he had shot somebody earlier in the day*." (Emphasis added.)

totality of the circumstances approach"); *State* v. *Velasco*, 248 Conn. 183, 193, 728 A.2d 493 (1999) (agreeing with trial court's determination that "the informant's reported personal observation of narcotics sales by the defendant constituted a sufficient basis for the informant's knowledge that the defendant had engaged in illegal narcotic[s] transactions" [internal quotation marks omitted]); *State* v. *Morrill*, 205 Conn. 560, 566, 534 A.2d 1165 (1987) ("The affidavit states that the informant personally observed the defendant sell mari[j]uana and [that] he heard the defendant state that he had ten pounds to sell. From these statements the magistrate could reasonably have inferred that the defendant was engaged in the ongoing criminal activity of selling mari[j]uana."). Like the known informant in *Smith*, Beckwith was an identifiable witness who had firsthand knowledge of the defendant's involvement in the robbery and shooting of the victim. The information she provided to Curet and Gorman therefore invested law enforcement with the reasonable suspicion to stop, and the probable cause to arrest, the defendant.[4] Thus, the trial court did not abuse its discretion in denying the defendant's motions to suppress evidence and statements obtained following his arrest by law enforcement officials.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] Predictive information of the defendant's future behavior (that the defendant would arrive at the bus station via a taxicab, clad in a dark hooded sweatshirt), which was provided by an anonymous caller to the communication center and corroborated by law enforcement, also provided police with the reasonable suspicion to stop and probable cause to arrest the defendant. See *Alabama* v. *White*, supra, 496 U.S. 332 (finding that predictive information of respondent's "future behavior" provided police with probable cause to make investigatory stop of respondent because "significant aspects of the caller's predictions were verified" by police).